**UNITED STATES, Appellant,**

v.

**Patrick SAVIN, Defendant–Appellee.**

**Docket No. 02–1718.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 18, 2003.

Decided: Nov. 4, 2003.

James G. Cavoli, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, and Laura Grossfield Birger, Assistant United States Attorney, of counsel), New York, NY, for Appellant.

Edward J.M. Little, Hughes Hubbard & Reed LLP (Kevin F. Clines and David G. Liston, of counsel), New York, NY, for Defendant–Appellee.

Before: FEINBERG and SACK, Circuit Judges, and WEXLER, District Judge.[*]

SACK, Circuit Judge.

The government appeals from the October 25, 2002, judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*) sentencing the defendant-appellee Patrick Savin to thirty-three months' imprisonment followed by three years' supervised release, restitution, and a mandatory $200 assessment. The defendant, pursuant to a plea agreement, pleaded guilty to wire fraud in violation of 18 U.S.C. §§ 1343 and 1346 and perjury in violation of 18 U.S.C. § 1623.

The government argues that the district court erred in failing to apply a four-level Sentencing Guidelines enhancement for an offense that "affected a financial institution" and from which "the defendant derived more than $1,000,000 in gross receipts." United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") § 2F1.1(b)(6)(B) (1995). An application note to the guideline stated that "any state or foreign ... investment company" is a financial institution for purposes of the guideline, as is "any similar entity." U.S.S.G. § 2F1.1, Application Note 14 (1995). The government contends that the district court should not have defined "foreign investment company" according to the law of Luxembourg, the country in which the affected entity was registered and had its principal place of business, but according to United States federal law. Savin counters that the enhancement cannot be applied to him because the guideline is invalid as applied to investment companies generally, and that the district court's conclusion that the entity at issue was not an "investment company" was correct applying either the law of Luxembourg or United States federal law. The government replies that even if "foreign investment company" were correctly defined by the district court with reference to the law of Luxembourg, Savin's behavior required the enhancement because the affected "entity" was "similar" to "a[ ] state or foreign ... investment company," *id.*, an issue that the district court did not address. Savin responds that the "similar entity" clause, if otherwise applicable to his case, is unconstitutionally vague as applied to him.

We conclude that the Sentencing Commission was not without authority to treat "any state or foreign ... investment company" as a "financial institution" in the application note to section 2F1.1(b)(6)(B) (1995); the application note is therefore valid as applied to investment companies generally. Because we also conclude that the district court should have looked to United States federal law to determine the meaning of "foreign investment company," we remand for the district court to resentence Savin using the federal-law meaning of the term. Because the "similar entity" clause is not unconstitutionally vague as applied to Savin, if the district court concludes on remand that the affected entity is not a "foreign investment company," the court should consider whether the affected entity is an entity "similar" to any of the kinds of institutions listed in Application

[*] The Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation.

Note 14, including a "state or foreign investment company."

## BACKGROUND

The facts underlying this appeal are largely undisputed. They are set forth in some detail in the district court's sentencing opinion, *United States v. Savin*, No. 00–CR–95 (RWS), 2002 WL 31520472 (S.D.N.Y. Oct.22, 2002), 2002 U.S. Dist. LEXIS 20175.

At all relevant times, Mezzonen, S.A., ("Mezzonen") was a tax-exempt "private corporation organized and existing under the laws of the Duchy of Luxembourg, with its principal place of business in Luxembourg." *Id.*, 2002 WL 31520472, at *1, *4, 2002 U.S. Dist. LEXIS 20175, at *1, *12. According to Mezzonen documents introduced in a tangentially related bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York, the company was formed in 1989 to engage exclusively in securities investments, particularly in high-yield bonds. Mezzonen raised approximately $50 million in capital by selling shares in itself to European investors.

Mezzonen hired Savin to provide investment advisory and portfolio management services with respect to Mezzonen's investments in high-yield securities. Through most of the 1990s, Savin, acting in part through Savin Carlson Investment Corporation, which he owned, engaged in a complex series of misrepresentations and diversions of funds enabling him to bilk Mezzonen out of several million dollars.

On November 1, 2001, the United States government filed a superseding grand jury indictment in the United States District Court for the Southern District of New York charging Savin with (1) conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, (2) wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, and (3) perjury in violation of 18 U.S.C. § 1623 in connection with his allegedly false testimony in the bankruptcy proceeding. On March 13, 2002, pursuant to a plea agreement, Savin entered a guilty plea to one count of wire fraud (for sending a facsimile transmission to an agent of Mezzonen in furtherance of a scheme to receive fees in the nature of kickbacks from a company in which Mezzonnen, through Savin, invested money) and one count of perjury (for his false testimony at the bankruptcy proceeding).

The plea agreement stipulated that the 1995 edition of the Guidelines applied to the offenses and that U.S.S.G. § 2F1.1 (1995) governed the wire-fraud offense. According to the plea agreement, Savin's offense level was calculated as follows: Pursuant to section 2F1.1(a), the base offense level was six. The level was increased by thirteen to nineteen pursuant to section 2F1.1(b)(1)(N) because the aggregate amount of the loss involved was more than $2,500,000 but less than $5,000,000. The level was increased by another two levels to twenty-one pursuant to section 2F1.1(b)(2) because the offense involved more than minimal planning. The level was then increased by another two levels to twenty-three pursuant to section 3B1.3 because the offense involved abuse of a position of private trust. Savin and the government also agreed that because the offense level for the perjury offense was nine or more levels less serious than the offense level for the wire-fraud offense, the perjury offense level would be disregarded pursuant to U.S.S.G. § 3D1.4(c). And, for accepting responsibility, it was agreed that Savin would be given the benefit of a three-level reduction pursuant to U.S.S.G. § 3E1.1.

The parties disagreed, however, as to the applicability of U.S.S.G. § 2F1.1(b)(6)(B), under which an offense

level is increased by four when the offense for which the defendant was convicted "affected a financial institution [if] the defendant derived more than $1,000,000 in gross receipts from the offense." They agreed to "litigate this issue at sentencing," Letter Agreement between the United States Attorney's Office for the Southern District of New York and Savin, at 3 (Mar. 13, 2002), and each reserved the right to appeal the district court's decision on the matter. If the four-level enhancement provided by section 2F1.1(b)(6)(B) was ultimately determined not to apply, Savin's total offense level would then be twenty, with a sentencing range of thirty-three to forty-one months. If the four-level enhancement did apply, it would be twenty-four, with a sentencing range of fifty-one to sixty-three months.

The district court decided that U.S.S.G. § 2F1.1(b)(6)(B) did not apply to Savin's wire-fraud offense. *Savin*, 2002 WL 31520472, at *4, 2002 U.S. Dist. LEXIS 20175, at *10. The court first rejected Savin's argument that the guideline was invalid as applied to Savin, reasoning that "the Sentencing Commission was 'fully empowered' to adopt [a] definition of 'financial institution'" that included investment companies. *Id.*, 2002 WL 31520472, at *4, 2002 U.S. Dist. LEXIS 20175, at *11 (quoting *United States v. Ferrarini*, 219 F.3d 145, 160 (2d Cir.2000)). The court then agreed with Savin that:

> [U]nder Luxembourg law, Mezzonen is not an investment fund. Instead, Mezzonen was structured as a private (non-listed) corporation under the local corporate form of a *societe anonyme* and benefitted from a tax-exempt status. This structure enabled Mezzonen to

avoid corporate, income, capital gains and liquidation taxes under Luxembourg law, as well as heavy regulation. As a matter of equity, Mezzonen should not be considered a financial institution for the purpose of assessing a weightier criminal punishment but not be considered as such—to its own benefit—for the purposes of domestic regulation. Because Mezzonen is not an investment fund under Luxembourg law, it will not be considered as such for the purposes of this sentence. The four-level enhancement does not apply.

*Id.*, 2002 WL 31520472, at *4, 2002 U.S. Dist. LEXIS 20175, at *12–*13. The district court did not consider whether Mezzonen was an entity "similar" to one of the financial institutions listed in a pertinent Guidelines application note, which would have qualified it as a financial institution for these purposes. *See* U.S.S.G. § 2F1.1, Application Note 14 (1995). The court therefore decided that Savin's total offense level under the Guidelines was twenty. *Savin*, 2002 WL 31520472, at *5, 2002 U.S. Dist. LEXIS 20175, at *13. Based on that determination and a criminal history category of I, the court sentenced Savin at the bottom of the applicable range, to thirty-three months' imprisonment followed by three years of supervised release, restitution, and a mandatory special assessment of $200.

The government appeals.[1]

## DISCUSSION

### I. Standard of Review

■ "We review the District Court's legal interpretation and construction of the

---

1. The government's appeal is with the permission of the United States Solicitor General. Under 28 C.F.R. § 0.20, among the responsibilities that are "assigned to, and shall be conducted, handled, or supervised by, the So-

licitor General, in consultation with each agency or official concerned," is "[d]etermining whether, and to what extent, appeals will be taken by the Government to all appellate courts." 28 C.F.R. § 0.20(b).

Sentencing Guidelines *de novo.*" *United States v. Rosse,* 320 F.3d 170, 172 (2d Cir.2003) (per curiam); *see also United States v. Rodriguez,* 943 F.2d 215, 218 (2d Cir.1991) (holding that the meaning of words in the Guidelines "is a matter of legal interpretation that we examine *de novo* "). "Assuming we find an error of law ..., we will ... remand for resentencing." *United States v. Thorn,* 317 F.3d 107, 126 (2d Cir.) (restricting such a remand to error that is not harmless), *cert. denied,* —— U.S. ——, 123 S.Ct. 2232, 155 L.Ed.2d 1119 (2003).[2]

## II.  U.S.S.G. § 2F1.1(b)(6)(B) (1995)

The 1995 version of U.S.S.G. § 2F1.1 addressed offenses involving fraud or deceit. It provided a four-level enhancement if the offense "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense." U.S.S.G. § 2F1.1(b)(6)(B) (1995). Application Note 14 to the guideline defined "financial institution" to include:

> any institution described in 18 U.S.C. §§ 20, 656, 657, 1005–1007, and 1014; *any state or foreign* bank, trust company, credit union, insurance company, *investment company,* mutual fund, savings (building and loan) association, union or employee pension fund; any

health, medical or hospital insurance association; brokers and dealers registered, or required to be registered, with the Securities and Exchange Commission; futures commodity merchants and commodity pool operators registered, or required to be registered, with the Commodity Futures Trading Commission; *and any similar entity,* whether or not insured by the federal Government.

U.S.S.G. § 2F1.1, Application Note 14 (1995) (emphasis added).

## III.  The Validity of Application Note 14

Background commentary to Guidelines section 2F1.1 stated that "[s]ubsection (b)(6)(B) implements the instruction to the [Sentencing] Commission in Section 2507 of Public Law 101–647." U.S.S.G. § 2F1.1, cmt. background (1995). The referenced section 2507 instructed the Sentencing Commission to increase the punishment for defendants who derive more than $1,000,000 in gross receipts from certain offenses affecting "a financial institution (as defined in section 20 of title 18, United States Code)." 18 U.S.C. § 20 lists nine types of financial institutions, none of which is "investment company."[3]

---

**2.** It would make little difference if we reviewed the district court's construction of "foreign investment company" with regard to the law of Luxembourg for an abuse of discretion, as Savin argues we should. "Little turns ... on whether we label review of *this* particular question abuse of discretion or *de novo,* for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citation omitted); *see also In re Grand Jury Subpoenas,* 318 F.3d 379, 383 (2d Cir.2003).

**3.** 18 U.S.C. 20 defines as a "financial institution"

(1) an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act);
(2) a credit union with accounts insured by the National Credit Union Share Insurance Fund;
(3) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. 1422), of the Federal home loan bank system;
(4) a System institution of the Farm Credit System, as defined in section 5.35(3) of the Farm Credit Act of 1971;
(5) a small business *investment company,* as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662);

Thereafter, in 2001, the Sentencing Commission revamped the Guidelines with regard to § 2F1.1, moving an amended version of § 2F1.1(b)(6)(B) to § 2B1.1(b)(12)(A). The Commission then stated that the definition of "financial institution" (virtually identical to the 1995 definition) was an implementation, *"in a broader form,* [of] the instruction to the Commission in Section 2507 of Public Law 101–647." U.S.S.G. § 2B1.1, cmt. background (2001) (emphasis added).

Savin argues that the application note was intended only to carry out the dictates of 18 U.S.C. § 20. To the extent that it specified entities not contained in section 20, he asserts, the note was *ultra vires.* The district court concluded that section 2F1.1(b)(6)(B) (1995) was valid as applied to Savin's sentencing. We agree with the district court.

In our recent decision in *United States v. Lauersen,* 343 F.3d 604 (2d Cir.2003), we held that the guideline is valid as applied to entities referred to in the application note even though they are not enumerated in 18 U.S.C. § 20, *id.* at 618 n. 15. We found the language of the pre-amendment application note entirely clear as to the scope of the guideline, and stated that the 2001 amendment rejected a contrary interpretation. *Id.* We are bound by *Lauersen* to conclude that the guideline is valid as applied to investment companies generally and thus to Savin on the facts of this case.

Because the application note, which states that "financial institution" as used in § 2F1.1(b)(6)(B) (1995) "is defined to include any . . . state or foreign . . . investment company . . . and any similar entity," is valid as to Savin, and because the guideline provided for a four-level enhancement "[i]f the offense . . . affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense," we must address the application of the terms "foreign investment company" and "any similar entity" to Savin's sentencing.

## IV. The Meaning of "Foreign Investment Company"

### A. The Use of the Law of Luxembourg or United States Federal Law

■ The government argues that the district court erred by basing its determination on whether Mezzonen was an investment company under the law of Luxembourg, the country where Mezzonen was registered and had its principal place of business. The government asserts that "foreign investment company" should be defined according to United States federal law instead. Under such a definition, the government contends, Mezzonen is a foreign investment company and Savin should thus receive the four-level enhancement in § 2F1.1(b)(6)(B). Savin responds that the question is, as the district court thought, whether Mezzonen was an investment company under the law of Luxembourg. Savin also argues that even under United

(6) a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act);
(7) a Federal Reserve bank or a member bank of the Federal Reserve System;
(8) an organization operating under section 25 or section 25(a) of the Federal Reserve Act; or
(9) a branch or agency of a foreign bank (as such terms are defined in paragraphs

(1) and (3) of section 1(b) of the International Banking Act of 1978).
18 U.S.C. § 20. The "small business investment company" of § 20(5) is a specialized entity defined in 15 U.S.C. § 662(3) under a statutory scheme to stimulate small businesses, *see* 15 U.S.C. § 661, and is thus distinct from an investment company in general.

States federal law, Mezzonen was not a "foreign investment company."

In deciding whether to look to the law of Luxembourg or United States law in interpreting the guideline and application note, we start with one of the fundamental purposes of the Guidelines. The Sentencing Commission has explained that a policy underlying the Guidelines is the promotion of "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. ch. 1, pt. A, § 3 (1995); *see also United States v. Young*, 143 F.3d 740, 744 (2d Cir.1998) (agreeing with the district court that "[t]he whole purpose of the guidelines … [is] … that similarly situated defendants should get the same sentence" (internal quotation marks omitted)). The objective of uniformity is not served if a defendant such as Savin is sentenced at a particular level because his victim was registered in Luxembourg and had its principal place of business there, while someone whose behavior is identical to such a defendant is sentenced at a significantly higher level because his otherwise identical victim is registered or has its principal place of business elsewhere. In such a case, applying the law of the place of the victim may lead to dissimilar sentences for similar behavior.

We find instructive the general principle that

> in the absence of a plain indication to the contrary, … Congress when it enacts a statute is not making the application of the federal act dependent on state law. That assumption is based on the fact that the application of federal legislation is nationwide and at times on the fact that the federal program would be impaired if state law were to control.

*Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943) (citations omitted); *accord Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); *Popkin v. N.Y. State Health & Mental Hygiene Facilities Improvement Corp.*, 547 F.2d 18, 19 (2d Cir.1976), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078 (1977).[4] We and our sister circuits have applied the *Jerome* presumption to the construction of terms in the Guidelines. *See United States v. Campbell*, 167 F.3d 94, 98 (2d Cir.1999) ("We conclude that, there being no pertinent provision in either the immigration statute or the Guidelines to suggest the applicability of state law, the question of whether a vacated conviction remains a conviction for purposes of § 1326(b) and Guidelines § 2L1.2 is … a question of federal law.");

---

4.  To be sure, some concepts are so grounded in state, local, or foreign law that courts have looked to those nonfederal legal definitions. *See De Sylva v. Ballentine*, 351 U.S. 570, 580–81, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (determining definition of "children" for purposes of copyright laws by reference to "the ready-made body of state law"); *Reconstruction Fin. Corp. v. Beaver County*, 328 U.S. 204, 210, 66 S.Ct. 992, 90 L.Ed. 1172 (1946) (defining "real property" subject to local taxation by reference to state laws because "[c]oncepts of real property are deeply rooted in state traditions, customs, habits, and laws," to which "[l]ocal tax administration is geared"); *Lembcke v. United States*, 181 F.2d 703, 706 (looking to local definitions of the word "widow" because "the validity of [a] marriage necessarily depends on the law of the place where the marriage was contracted"); *cf. Miss. Band of Choctaw Indians*, 490 U.S. at 43–44, 109 S.Ct. 1597 ("[T]he cases in which we have found that Congress intended a state-law definition of a statutory term have often been those where uniformity clearly was not intended."). No such concepts are involved here.

*see also United States v. Brown,* 314 F.3d 1216, 1223 (10th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 1338, 154 L.Ed.2d 1083 (2003); *United States v. Duty,* 302 F.3d 1240, 1241 (11th Cir.2002) (per curiam); *United States v. Jones,* 107 F.3d 1147, 1163 (6th Cir.), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997); *United States v. Ramos–Garcia,* 95 F.3d 369, 371 (5th Cir.1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 751, 136 L.Ed.2d 688 (1997); *United States v. Reed,* 94 F.3d 341, 344 (7th Cir.1996); *United States v. Cuevas,* 75 F.3d 778, 781 (1st Cir.1996); *United States v. Stewart,* 49 F.3d 121, 123 n. 3 (4th Cir.1995).

The *Jerome* presumption reflects a preference for the uniform application of federal law irrespective of where within the United States an issue regarding the law arises. This concern with interstate uniformity is absent here. We see no reason, however, why this approach should not apply in the interests of uniformity to limit the incorporation of foreign law into federal law. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 48 F.3d 551, 554–55 (D.C.Cir.) (concluding that when a penal statute manifests a policy of uniform enforcement, it would frustrate legislative intent to make the federal statute's application dependent on foreign law), *cert. denied sub nom. Liquidation Comm'n for BCCI (Overseas) Ltd., Macau v. United States,* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 489 (1995); *cf. Nat'l Labor Relations Bd. v. Hearst Publ'ns, Inc.,* 322 U.S. 111, 123, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (opining that referring to other domestic sovereigns' legal definitions "would introduce variations into [a] statute's operation as wide as the differences the forty-eight states and other local jurisdictions make in applying [a definition] for wholly different purposes"). And we think that the rule applies to interpretations of the Sentencing Guidelines: Absent a plain indication to the contrary, the Guidelines should be applied uniformly to those convicted of federal crimes irrespective of how the victim happens to be characterized by its home jurisdiction.

Moreover, in light of the implications for uniformity if foreign law were applied to determine the affected entity's status, the Sentencing Commission likely would have expressed more plainly the incorporation of foreign law had it meant to do so. Indeed, the Sentencing Commission has done similarly in other contexts. *See, e.g.,* U.S.S.G. § 2T1.1, Application Note 3 (2002) (" 'Criminal activity' means any conduct constituting a criminal offense under federal, state, local, or foreign law.").

We therefore agree with the government that "foreign," as it modifies "investment company," is used not to incorporate foreign law, but in a geographic sense: Any investment company, as defined by United States federal law, that is located outside of the United States is a "foreign investment company" and, therefore is, according to Application Note 14, a financial institution under section 2F1.1(b)(6)(B) (1995). *Cf. In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India,* 385 F.2d 1017, 1021 (2d Cir.1967) (defining the statutory language of "foreign ... tribunal" to exclude the Indian Income–Tax Office partly because "a tax assessor scarcely fits the notion that most American legislators would entertain of what constitutes a 'tribunal,' " implying that a "foreign tribunal" is a tribunal, as defined by federal law, which is located outside the United States).

We therefore turn to the task of determining the meaning of "foreign investment company" under United States federal law.

*B. Definition of "Foreign Investment Company"*

█ In interpreting the Guidelines, "we are guided by the notion that [they], hav-

ing the force and effect of law, are to be construed as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *United States v. Kirvan,* 86 F.3d 309, 311 (2d Cir.1996); *see also United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 90 (2d Cir.1999) (noting that when a term is "not defined in the Guidelines, is not used elsewhere in the Guidelines, ... and is not a term of art ... [w]e ... look to the ordinary meaning of the words"). We thus apply traditional principles of statutory construction to guideline construction. We also apply these traditional principles to interpretive or explanatory guideline commentary, because it too is generally authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

█ Because, applying United States federal law, "foreign" has no more than a geographic connotation, we are left to determine under federal law the definition of "investment company." Savin argues that we should look to the definition of "foreign investment company" in the Internal Revenue Code. The government argues that we should look either to the definition of "investment company" in the Investment Company Act of 1940 or to the commonly accepted definition of the term.

The Internal Revenue Code definition of "foreign investment company," contained in a section addressing gains on stock in foreign investment companies, limits its definition to that section.[5] The Investment Company Act definition similarly specifically limits its definition to the subchapter in which it appears.[6] Each definition is thus too intentionally specific to its context to serve as a reliable guide to the meaning of the term as it is used in the Guidelines for a completely different purpose: to determine the appropriate sentence of a person convicted of an offense adversely affecting a specified type of victim.[7]

---

5. 26 U.S.C. § 1246(b) defines "foreign investment company" to mean:
   For purposes of this section, ... any foreign corporation which, for any taxable year beginning after December 31, 1962, is-
   (1) registered under the Investment Company Act of 1940 ... either as a management company or as a unit investment trust, or
   (2) engaged (or holding itself out as being engaged) primarily in the business of investing, reinvesting, or trading in ... securities ... at a time when 50 percent or more of the total combined voting power of all classes of stock entitled to vote, or the total value of all classes of stock, was held directly (or indirectly ...) by United States persons.

6. 15 U.S.C. § 80a–3(a)(1) states:
   When used in this subchapter, "investment company" means any issuer which-
   (A) is or holds itself out as being engaged primarily, or proposes to engage primarily,

in the business of investing, reinvesting, or trading in securities;
   (B) is engaged or proposes to engage in the business of issuing face-amount certificates of the installment type, or has been engaged in such business and has any such certificate outstanding; or
   (C) is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of such issuer's total assets (exclusive of Government securities and cash items) on an unconsolidated basis.

7. If "investment company" were not a term with a common meaning, we might have good reason to utilize these federal definitions in interpreting the term. The term, however, has a common meaning as discussed below, and we have no need to rely on these specialized definitions.

Traditional statutory interpretation rules under federal law counsel that we define "investment company" by its common meaning. *Cf. United States v. Ferrarini*, 219 F.3d 145, 161 (2d Cir.2000) (using *Webster's Third New International Dictionary, Unabridged* (1993) to determine the definition of "bank" under the same application note), *cert. denied sub nom. Kagan v. United States*, 532 U.S. 1037, 121 S.Ct. 1997, 149 L.Ed.2d 1001 (2001). *Webster's Third New International Dictionary, Unabridged* (1993) defines "investment company" as "a company that holds securities of other corporations for investment benefits only." The glossary in the *Series 7: General Securities NYSE/ NASD Registered Representative Study Manual* defines "investment company" as "[a] company or trust engaged in the business of investing in (and trading) securities," *id.* at 24. Based on these similar definitions, we conclude that "investment company" in Application Note 14 includes a company substantially engaged in the business of investing in securities of other companies.

## V. The Equities

■ The district court, as noted in the *Background* section above, remarked:

[Mezzonen's] structure [under the law of Luxembourg] enabled Mezzonen to avoid corporate, income, capital gains and liquidation taxes under Luxembourg law, as well as heavy regulation. As a matter of equity, Mezzonen should not be considered a financial institution for the purpose of assessing a weightier criminal punishment but not be considered as such—to its own benefit—for the purposes of domestic regulation. Because Mezzonen is not an investment fund under Luxembourg law, it will not be considered as such for the purposes of this sentence.

*Savin*, 2002 WL 31520472, at *4, 2002 U.S. Dist. LEXIS 20175, at *12-*13. We disagree. Guideline offense levels are designed to reflect the seriousness of the offense for which a convicted criminal is being sentenced. *See, e.g., Nichols v. United States*, 511 U.S. 738, 740 n. 3, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).[8] In arriving at an offense level for Savin's crime of wire fraud, the relevant question for the court is how serious the crime is according to the Guidelines, not what is equitable for the victim. The answer to the question depends on the nature of Savin's offense, not what is fair to Mezzonen.[9] His crime of wire fraud is the same

---

**8.** As Justice Breyer observed:

Congress said that the Commission, when reducing disparity, should not "sacrifice proportionality"—the principle that criminal conduct of greater severity should be punished more harshly than less serious conduct. United States Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 13 (June 1987) (Supplementary Report). *See also* 18 U.S.C. § 3553(a)(2)(A) (sentences should "reflect the seriousness of the offense" and "provide just punishment"); 28 U.S.C. §§ 994(a)(2) and (g). This effort to achieve proportionality required the Commission to identify those factors that make criminal conduct more or less serious and provide a

way for those factors to be taken into account in the Guidelines. Yet because the list of relevant sentencing factors is long, and their interaction impossibly complex, the Commission had to strike a compromise between the need for proportionality on the one hand and the need for Guidelines that were simple enough to be administered. USSG ch. 1, pt. A3 [(Policy Statement)].

*United States v. LaBonte*, 520 U.S. 751, 764, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997) (Breyer, J., dissenting) (alterations omitted).

**9.** More generally, a sentencing court is required to apply the mandatory four-level enhancement of U.S.S.G. § 2F1.1(b)(6)(B) (1995) if it determines that the guideline's

regardless of the benefits Mezzonen sought to reap from its status under the law of Luxembourg.

Of course, when a convicted person is sentenced, the identity of his or her victims may matter. The Guidelines thus generally punish crimes against vulnerable or sensitive victims more severely. For example, the punishment for sexual abuse depends in part on the victim's age, *see* U.S.S.G. § 2A3.1(b)(2) (2002), as does the punishment for "promoting a commercial sex act or prohibited sexual conduct," U.S.S.G. § 2G1.1 (2002). Indeed, a portion of the Guidelines—Chapter 3, Part A—is devoted to "Victim–Related Adjustments," providing increases in offense levels for offenses involving, for instance, "vulnerable victims," U.S.S.G. § 3A1.1(b) (2002). In the case before us, if the victim is indeed a financial institution, that fact may result in a substantially increased sentence.

We nonetheless fail to see how Mezzonen's tax-exempt status under the law of Luxembourg changes the nature of Savin's crime against it, rendering it somehow less serious than it would have been were Mezzonen a taxable entity. We do not think that the length of Savin's sentence should to any degree depend upon that factor. Were it otherwise, the result would be at odds with the Guidelines' principle of uniformity discussed in part IV, above, calling for the application of similar sentences to similar criminal offenses committed by similar offenders.

## VI. Vagueness of "Any Similar Entity"

Savin argues that if, upon remand, the district court concludes that Mezzonen was not a foreign investment company, it still cannot impose the four-level enhancement on the basis that Mezzonen was an "entity" that was "similar" to a "state or foreign investment company," U.S.S.G. § 2F1.1, Application Note 14 (1995), because that provision is unconstitutionally vague as applied to Savin in this case. If the district court decides that Mezzonen was a foreign investment company or that it was not an entity similar to a state or foreign investment company, then whether the "similar entity" clause is too vague will be of no moment. But should the district court decide otherwise, to avoid an unnecessary further appeal we nonetheless address the vagueness issue here.

■ A statute is not vague as applied if it "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Assuming that the Sentencing Guidelines are subject to an attack on unconstitutional vagueness grounds, something we have never decided, *see United States v. Johnson*, 221 F.3d 83, 99 (2d Cir.2000) (reserving the question), *cert. denied,* 533 U.S. 953, 121 S.Ct. 2599, 150 L.Ed.2d 757

factual predicates are present. *Cf. United States v. Hernandez,* 83 F.3d 582, 585 (2d Cir.1996) ("Once a court finds that obstruction of justice took place, however, the two-level enhancement is mandatory [under U.S.S.G. § 3C1.1]."); *United States v. Jimenez,* 68 F.3d 49, 51 (2d Cir.1995) (holding that when the district court explicitly finds that a mandatory guideline is applicable, "the court [i]s obliged to increase [the] offense level.

The language of U.S.S.G. § 3B1.1 is mandatory, not permissive."), *cert. denied sub nom. Guzman v. United States,* 517 U.S. 1148, 116 S.Ct. 1448, 134 L.Ed.2d 568 (1996). "[T]he logical structure of the Guideline ('if A, then B') clearly commands that a definite result ... must follow the occurrence of a stated conditional event." *United States v. Williamson,* 154 F.3d 504, 505 (3d Cir.1998). General equitable principles do not apply.

(2001), Savin's vagueness challenge nevertheless fails.

 Savin's argument is based on his view that "the definition of financial institution [in the application note] is comprised of a confusing multitudinous mixture of many different types of entities—organizations and humans, alike—with the sole common denominator being that they are labeled 'financial institutions' by the Sentencing Commission." Appellee's Br. at 48. That may be so. And if the application note referred to entities that must be similar to *all* of the different types of entities listed, it would indeed be mystifying. It did not. It referred to entities similar to *any one or more* of the listed entities. *See Ferrarini*, 219 F.3d at 160–61 (questioning whether a premium finance company was similar to any of the enumerated instances of financial institutions, and finding that it was similar to a bank). We think that a reasonable person would easily understand which entities are "similar" to a "state or foreign investment company," and that if such an entity was "affected" by his or her wire fraud offense and he or she derived more than $1,000,000 in gross receipts from the offense, a four-level enhancement would be warranted. The "similar entity" clause is thus not too vague to be applied to Savin here.

The district court did not decide whether to impose a four-level enhancement under the "similar entity" clause. It will be required to do so on remand if it concludes that, applying United States federal law, Mezzonen is not a foreign investment company under Application Note 14.

## CONCLUSION

We conclude, contrary to the view of the district court, that "foreign investment company" in Application Note 14 includes a company located outside the United States substantially engaged in the business of investing in securities of other companies, whether or not it is an entity that is an "investment company" under the law of the jurisdiction in which it is registered and where it has its principal place of business. Savin insisted during the course of oral argument that even applying United States federal law, Mezzonen was neither a "foreign investment company" nor an "entity" that is "similar to" the kinds of institutions listed in Application Note 14, specifically in this case a "state or foreign investment company." We remand this case to the district court for resentencing in the course of which it will be required to determine whether Mezzonen was a "foreign investment company" or a "similar entity."