In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4259

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHARLES HARRIS,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 771—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED JANUARY 9, 2007—DECIDED JUNE 15, 2007

———————

Before BAUER, RIPPLE and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Charles Harris was charged in a one-count information with defrauding investors through the use of interstate wires. *See* 18 U.S.C. § 1343. Mr. Harris entered a plea of guilty on June 23, 2005 and on October 6, 2005, the district court sentenced him to 168 months' imprisonment and three years of supervised release. The court further ordered restitution in the amount of $13,861,849. Mr. Harris filed a motion for reconsideration of his sentence on October 31, 2005; this motion was denied on November 1, 2005. Mr. Harris timely appealed. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

In September 1996, Mr. Harris formed Tradewinds International, Limited Partnership ("Tradewinds"), a hedge fund that engaged in trading various currency, bond and equity products. Tradewinds was structured as a limited partnership; Mr. Harris was the general partner, and the patrons of the fund were limited partners. Mr. Harris also formed two other hedge fund entities, all of which are collectively known as "Tradewinds"; Mr. Harris was the only manager of those entities.

Mr. Harris sent Tradewinds investors quarterly statements via mail or e-mail. The wire fraud charge to which Mr. Harris pleaded guilty arose out of e-mail communications in which he made material misstatements and omissions concerning the profitability of Tradewinds, the use and/or profitability of funds received from investors and the status of each investor's investment. He was charged in a one-count information with defrauding investors through the use of interstate wires in violation of 18 U.S.C. § 1343,[1] and entered a plea of guilty to the

---

[1]  18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or impris-
> (continued...)

information on June 23, 2005.

In the Presentence Investigation Report ("PSR"), the probation officer calculated a total offense level of 36, for which the advisory guidelines range is 188-235 months. Mr. Harris then submitted his objections to the PSR in which he challenged the inclusion of the "financial institution enhancement," *see* U.S.S.G. § 2B1.1(b)(13)(B)(i).[2] He contended that Tradewinds was not a "financial institution" as that term is employed in the advisory Guidelines. He also objected that he should not have received the sophisticated means enhancement, *see* § 2B1.1(b)(9)(C).[3]

Mr. Harris and his wife forfeited most of their real and personal property in order to compensate the victims of his misrepresentations. Mr. Harris also submitted letters to the district court, written by himself, family members and friends, that described his role as a devoted husband and father. Furthermore, Mr. Harris fully co-operated with Government officials at all times during his proceedings.

---

[1] (...continued)
oned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[2] U.S.S.G. § 2B1.1(b)(13)(B)(i) provides a four-level enhancement where the offense "substantially jeopardized the safety and soundness of a financial institution."

[3] The district court determined that the offense did not involve "sophisticated means" as that term is defined in the Guidelines. The Government has not cross-appealed this ruling and therefore the propriety of the sophisticated means enhancement is not before us.

Relevant to this appeal, the district court analyzed, at Mr. Harris' sentencing, whether Mr. Harris should receive the "financial institutions" enhancement under § 2B1.1(b)(13)(B)(i). This section of the advisory sentencing guidelines provides for a four-level upward adjustment to a defendant's offense level when the crime "substantially jeopardized the safety and soundness of a financial institution." U.S.S.G. § 2B1.1(b)(13)(B)(i).

At the sentencing hearing, Mr. Harris contended that Tradewinds was not a financial institution. In reply, the Government relied upon our opinion in *United States v. Collins*, 361 F.3d 343 (7th Cir. 2004), which held that an "investment company" was a "financial institution" for purposes of the enhancement. *Id.* at 347. The Government submitted that, because Tradewinds invested people's money, it should be considered an investment company and therefore a financial institution.

Mr. Harris' attorney countered that *Collins* was not controlling because the "institution" at issue in *Collins* was a sham corporation. The district court rejected that argument, noting that the petitioners in *Collins* had made, unsuccessfully, the same argument. In *Collins*, we held that whether a corporation was a "sham" had no bearing on whether it could be considered a financial institution. The Government proceeded to argue that, because Tradewinds was a "hedge fund," it was distinguishable from the "investment company" at issue in *Collins*. Neither the Sentencing Guidelines nor the relevant application note references specifically hedge funds; the statutory

definition, at 18 U.S.C. § 20,[4] also does not refer specifically to hedge funds. Because the statutory definition refers to "investment companies," and not hedge funds, Mr. Harris urges that hedge funds cannot be considered "financial institutions" under the statute.

The district court inquired about the investments Tradewinds allegedly had made, and the prosecutor stated that Tradewinds was supposedly investing in bonds and securities; Mr. Harris added that the company

---

[4] 18 U.S.C. § 20 defines financial institution as:

(1) an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act);

(2) a credit union with accounts insured by the National Credit Union Share Insurance Fund;

(3) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. 1422), of the Federal home loan bank system;

(4) a System institution of the Farm Credit System, as defined in section 5.35(3) of the Farm Credit Act of 1971;

(5) a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662);

(6) a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act);

(7) a Federal Reserve bank or a member bank of the Federal Reserve System;

(8) an organization operating under section 25 or section 25(a) of the Federal Reserve Act; or

(9) a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978).

traded "commodities," "going long and short, and also other types of investments." R.80-1 at 26.

The district court determined that *Collins* largely fore-closes Mr. Harris' argument that Tradewinds is not a financial institution. The district court noted that it was theoretically disputable whether Tradewinds could be considered an investment company. However, it noted that, in footnote 2 of *Collins*, this court had referenced a definition of "investment company" that defined the term as " 'a company substantially engaged in the business of investing in securities of other companies.' " *Collins*, 361 F.3d at 346 n.2 (citing *United States v. Savin*, 349 F.3d 27, 37 (2d Cir. 2003)). The district court then stated that, because it viewed Tradewinds as essentially an organiza-tion substantially engaged in the business of investing in securities of other companies, Tradewinds should be characterized as a financial institution for purposes of the sentencing enhancement. Mrs. Harris spoke at the sentencing about her husband's remorse. Mr. Harris' attorney also spoke on his behalf, and Mr. Harris him-self expressed his contrition to the district court.

The court then discussed the nature and circumstances of the offense, referring to submissions from victims of the fraud. The harm to the victims, stated the court, is "really beyond quantification." R.80-2 at 72. In discussing Mr. Harris' family history and characteristics of the crime, the court determined that Mr. Harris' family cir-cumstances weighed in favor of a shorter sentence; the court also noted that Mr. Harris had made efforts to locate the assets. In discussing the countervailing con-sideration of the seriousness of the offense and the con-comitant need to promote respect for the law and to provide just punishment, the court emphasized that the

criminal acts were repeated and had occurred over a long period of time. Furthermore, because the crime was one that required a significant amount of forethought on Mr. Harris' part, the court determined that a significant sentence also would contribute to the goal of deterrence. Considering the issue of remorse, the court observed that, at the time he "announced" his wrongdoing to the partners in the organization, Mr. Harris did not appear remorseful, although he certainly was remorseful at sentencing. The district court further observed that Mr. Harris did not need training, care or correctional treatment. The district court also recognized the importance of restitution in a case involving financial wrongdoing.

The district court then addressed the need to avoid unwarranted sentencing disparities among people with similar records. Mr. Harris urged that individuals charged in large-scale financial fraud cases such as Enron and WorldCom had received lesser sentences. The district court determined that these cases should have little effect on its decision because it knew little about the particular facts of those cases. Finally, the district court looked to the advisory sentencing guidelines calculation, which put the range at 151-188 months, and determined that a sentence within that range was sufficient but not greater than necessary. The court then imposed a sentence in the middle of the range, 168 months, to be followed by three years of supervised release. The court also imposed a restitution obligation of $13,861,849.

## II

## DISCUSSION

### A.

When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a);[5] *United States v. Dean*, 414 F.3d 725, 728 (7th Cir.

---

[5] 18 U.S.C. § 3553(a) provides:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in

(continued...)

<hr>

[5] (...continued)

the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(continued...)

2005). Here, the district court properly consulted the advisory guidelines in the course of fulfilling its statutory obligation. After calculating Mr. Harris' base offense level, the court applied the financial institution enhancement in § 2B1.1(b)(13)(B)(i); this section directs a sentencing court to impose a four-level upward adjustment to a defendant's offense level when the crime "substantially jeopardized the safety and soundness of a financial institution." U.S.S.G. § 2B1.1(b)(13)(B)(i). Mr. Harris submits that the district court should not have considered Tradewinds to be a "financial institution" for purposes of the advisory guidelines calculation. The Government, however, takes the view that Tradewinds is clearly an investment company; it then reasons that, because this court has held that an investment company is a financial institution,[6] Tradewinds is a financial institution for purposes of the enhancement.

Whether the district court was correct in its determination that Tradewinds is a financial institution for purposes of this guidelines section is a question of law that we review de novo. *United States v. Jones*, 313 F.3d 1019, 1021 (7th Cir. 2002). Specifically, we review de novo judicial application of the Guidelines to factual findings. *United States v. Olson*, 450 F.3d 655, 684 (7th Cir. 2006).

---

[5] (...continued)

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

> (7) the need to provide restitution to any victims of the offense.

[6] *United States v. Collins*, 361 F.3d 343, 347 (7th Cir. 2004).

The Sentencing Commission amended the Guideline commentary in 2001 to express its intent to implement, in a broader form, Congress' definition of financial institution in the Crime Control Act of 1990. *See Collins*, 361 F.3d at 347. The commentary defines a "financial institution" in the following manner:

> "Financial institution" includes any institution described in 18 U.S.C. 20, 656, 657, 1005, 1006, 1007, or 1014; any state or foreign bank, trust company, credit union, insurance company, *investment company*, mutual fund, savings (building and loan) association, union or employee pension fund; any health, medical, or hospital insurance association; brokers and dealers registered, or required to be registered, with the Securities and Exchange Commission; futures commodity merchants and commodity pool operators registered, or required to be registered, with the Commodity Futures Trading Commission; and any similar entity, whether or not insured by the federal government. "Union or employee pension fund" and "any health, medical, or hospital insurance association," primarily include large pension funds that serve many persons (e.g., pension funds or large national and international organizations, unions, and corporations doing substantial interstate business), and associations that undertake to provide pension, disability, or other benefits (e.g., medical or hospitalization insurance) to large numbers of persons.

U.S.S.G. § 2B1.1, Application Note 1 (emphasis added).

In *Collins* we held that "investment companies" are "financial institutions" for purposes of the Guidelines. 361 F.3d at 347. Furthermore, we noted with approval a decision of our colleagues in the Second Circuit that

defined an "investment company" as "a company sub-
stantially engaged in the business of investing securities
of other companies." *Id.* at 346 n.2 (quoting *Savin*, 349 F.3d
at 37).

At the sentencing hearing, the parties represented to the
district court that Tradewinds, a hedge fund, invested in
bonds, securities, commodities, going long and short and
other types of investments. Given the definition of an in-
vestment company as "a company substantially engaged in
the business of investing in securities of other companies,"
*Collins*, 361 F.3d at 346 n.2, we believe that a hedge fund
such as Tradewinds was engaged in *investing* in bonds,
securities and commodities and was making other types
of *investments*. We do not think, for purposes of deter-
mining the appropriate advisory guideline, a hedge fund
such as Tradewinds can be distinguished in a principled
way from other types of investment companies. Trade-
winds invested in the securities of other companies, and
this characteristic renders it a financial institution for
purposes of the Guidelines enhancement. Moreover, the
harm caused to the limited partners of Tradewinds was
indisputably financial in nature, the same type of harm
that would be caused by any of the financial institutions
described in the application note to the guidelines provi-
sion. Mr. Harris' crime caused the same societal damage
as would have been caused by any of the listed entities.

Our case law evinces a broad understanding of the term
"financial institution." For example, in *United States v.
Randy*, 81 F.3d 65, 69 (7th Cir. 1996), we stated that, "when
it walks and talks like a financial institution, even if it's a

phony one, it is, in our view, covered by [this provision]."[7]
Further, the list of financial institutions in the Guidelines
note is non-exhaustive and contains a catch-all provision
that requires that "any similar entity" be considered a
financial institution. U.S.S.G. § 2B1.1, Application Note 1.
Furthermore, the Sentencing Commission explicitly
stated that, in amending the guideline commentary, it
intended to broaden the definition of a financial institution.
*Collins*, 361 F.3d at 347. These considerations lead us to
the conclusion that the district court correctly determined
that Tradewinds qualifies as a financial institution for
purposes of the sentencing enhancement.

Mr. Harris also urges that his Fifth Amendment right
to due process was infringed because the district court
applied the four-level sentencing enhancement for sub-
stantially jeopardizing the safety and soundness of a
financial institution in violation of the Supreme Court's
holding in *United States v. Booker*, 543 U.S. 220 (2005). In his
view, the determination that Tradewinds was a financial
institution must be determined by a jury beyond a reason-
able doubt, even for purposes of a sentence enhancement.
Mr. Harris recognizes that *Booker* addressed this precise
question, but nevertheless contends that, because *Booker*
considered this question in the context of the Sixth Amend-
ment and he raises a Fifth Amendment Due Process
challenge, *Booker* does not foreclose his claim. We cannot

---

[7] At the time *United States v. Randy*, 81 F.3d 65 (7th Cir. 1996),
was decided, this particular enhancement was codified else-
where in the United States Sentencing Guidelines. However,
now the enhancement for "substantially jeopardiz[ing] the
safety and soundness of a financial institution" can be found at
§ 2B1.1(b)(13)(B)(i) of the Guidelines.

accept this argument. *Booker* rendered the Guidelines advisory. *Booker*, 543 U.S. at 224. Because the Guidelines are no longer mandatory, Mr. Harris' sentence was not impermissibly *enhanced*. Rather, the district judge simply took the Guidelines into account, addressed all of the factors enumerated in 18 U.S.C. § 3553(a), and determined an appropriate sentence. The district court repeatedly did refer, as do the parties, to a four-grade sentencing "enhancement." However, this use of residual pre-*Booker* terminology does not alter our conclusion that the district court's sentencing methodology appropriately considered the Guidelines as advisory.

## B.

Mr. Harris raises several other matters that he believes rendered his sentence infirm. First, he submits that the district court failed to take into account any mitigating circumstances when calculating his sentence. We cannot accept this argument. In its oral ruling, the court explicitly mentioned that "there [are] definitely some mitigating factors here that are significant." R.80-2 at 73. Indeed, the court specifically discussed Mr. Harris' efforts to identify the location of the assets and carefully examined and gave considerable weight to Mr. Harris' family circumstances. The district court therefore indisputably considered mitigating factors before determining Mr. Harris' sentence.

Mr. Harris further contends that the sentence that he received creates an unwarranted sentencing disparity because he received a longer sentence than the individuals involved in the Enron and WorldCom frauds who, he submits, committed frauds similar to the one he perpetrated, but on a larger scale. The district court sensibly

replied that it did not "know enough about the particular details of those cases" to make a proper comparison. *Id*. at 76-77. The court further noted that "there are all sorts of factors involved in different cases that explain why different sentences are given." *Id.* at 77. Indeed, the district court considered sentencing disparities when determining Mr. Harris' sentence, but decided that, in the overall balance of factors, there were other elements of Mr. Harris' crime that weighed in favor of a longer sentence. The district court recognized the fact that every case is different, and employed the § 3553(a) factors to determine an appropriate sentence in Mr. Harris' case.

## C.

We also believe that the sentence imposed by the district court was a reasonable one under all the circumstances. In *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), we held that sentences properly calculated under the Guidelines would be entitled to a presumption of reasonableness. It is unnecessary, however, to rely on that presumption in this case.[8] Here, the district court clearly heeded the congressional direction to consider the factors set forth in 18 U.S.C. § 3553(a). We have held that a sentencing judge "can discuss the application of the statutory factors to the defendant not in checklist fashion

---

[8] We are aware of the case pending before the Supreme Court of the United States, *United States v. Rita*, 177 F. App'x 357 (4th Cir. 2006), *cert. granted*, 75 U.S.L.W. 3243 (U.S. Nov. 3, 2006) (No. 06-5754). In *Rita*, the Supreme Court will address the constitutionality of the presumption of reasonableness accorded to sentences properly calculated under the Guidelines.

but instead in the form of an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *Dean*, 414 F.3d at 729. "[I]t is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *Id*. (internal citations omitted). In *United States v. Bullion*, 466 F.3d 574 (7th Cir. 2006), we again clarified that the reasonableness standard "confers broad sentencing discretion. The judge must consider the guidelines but is in no sense bound by them. He is bound only by the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Id*. at 575.

Here, the district court carefully considered the § 3553(a) factors, weighed them against one another, and then determined a sentence in the middle of the range to be appropriate. This careful consideration of the needs of the defendant *and* the needs of society certainly fulfills the court's responsibility.[9]

### Conclusion

For these reasons, the judgment of the district court is affirmed.

AFFIRMED

---

[9] Because we have determined that the district court did not commit any error in determining Mr. Harris' sentence and because we believe that the sentence imposed was a reasonable one, we need not consider separately at any length Mr. Harris' separate contention that the district court denied him due process of law in the imposition of the sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*