NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 22, 2010
Decided December 10, 2010

**Before**

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-1763

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:04-CR-074 |
| IDRIS TAYLOR, | |
| *Defendant-Appellant*. | Sarah Evans Barker, |
| | *Judge*. |

## O R D E R

The district court denied Idris Taylor's 18 U.S.C. § 3582(c)(2) motion to reduce his prison sentence on the grounds that a reduction was "not appropriate because of the nature and seriousness of the danger to the community that would be posed by a reduction in sentence." Taylor challenged the district court's discretionary denial of his § 3582(c)(2) motion. Taylor argues that the district court's "unadorned statement that a reduction was not appropriate" and mere use of language from a note from the sentencing guidelines was procedurally insufficient to allow us to review the district court's discretion. Because the district court's statement met the minimal requirements, we affirm the district court's denial of Taylor's § 3582(c)(2) motion.

## I. Background

Taylor and seven others were indicted on June 9, 2004, for conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. The conspiracy spanned four years, obtaining an annual average of 560 kilograms of cocaine from a Chicago source for distribution in the Indianapolis area in powder and crack forms. Taylor's role in the conspiracy was that of a drug distributor. Police found 0.12 grams of cocaine at Taylor's residence as well as evidence that more drugs may have been washed down the bathroom sink as police entered his home. The government estimated that Taylor was involved with between 50 and 150 grams of crack cocaine.

Taylor pled guilty on July 7, 2005, to conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine. At Taylor's October 4, 2005, sentencing hearing, the district court reviewed his criminal history and noted that he "started down this slippery slope back when [he was] 14" resulting in a criminal history category of IV, "which is pretty darn serious." The district court noted that Taylor's drug addiction factored into his long periods of unemployment, but his criminal history was "the complicating factor."

That history began when Taylor was 14, when he was sentenced to 30 days' probation for auto theft, fleeing law enforcement, and criminal trespass. At 16, Taylor was sentenced to seven months' probation for truancy. While on probation, Taylor was committed to the Indiana Boys School for involuntary manslaughter. The victim died after Taylor struck him in the face and caused him to fall and hit his head on the concrete. At 20, Taylor was convicted of criminal trespass. A year later, police attempted to pull Taylor over while he was driving, but Taylor fled, ultimately crashing into a parked car. Taylor was convicted of operating a motor vehicle while intoxicated. At the time, Taylor's license was indefinitely suspended for previous driving-related offenses. At 23, Taylor was convicted of criminal recklessness and carrying a handgun without a license in an incident described as a shootout in a residential neighborhood. Another person died in the shooting. Taylor later admitted to the police that he drove the victim to the scene to buy marijuana and that he and the victim exchanged gunfire with others in the neighborhood. Taylor was on parole for this offense when he was arrested for this drug conspiracy.

The district court took account of Taylor's criminal history, and in particular the two incidents in which people died, and said:

> . . . this is a tragedy that's written on the pages of this presentence report in every direction. Everybody who's had contact with you has either brought tragedy to your life or you brought tragedy to theirs. Isn't that true?

***

And unless you want to play out this tragedy to your dying breath, you've got to make some changes. And unfortunately, the penalties you face now are a way to force on you the necessity of making some changes because what society is saying with these stiff penalties is "We can't take this anymore, we can't trust Mr. Idris Taylor to do this for himself. We have to protect the rest of society until he gets stabilized."

And it also says to everybody else out there there's a big price to pay for this. And that's what happened here. It's all sort of accumulated.

Taylor's counsel argued that had the blows landed differently in the fistfight, Taylor would have been guilty of merely misdemeanor battery or D felony battery. (Taylor claimed at sentencing that he was merely breaking up the fight and that the victim pulled a knife, although Taylor's presentence investigation report indicates that it was the victim who attempted to break up a fight in which Taylor was involved.) Taylor's counsel argued that Taylor did not shoot the victim in the shootout; rather, the victim was Taylor's friend who went with Taylor to the scene of the shootout (Taylor said he still has dreams about his friend and accepted responsibility for the incident). Taylor's counsel also explained that "the haunts" from the fistfight incident and the death of his friend in the shootout fueled Taylor's substance abuse addictions, which led to his trespass and DUI convictions.

The district court sentenced Taylor to 144 months in prison (Taylor's guideline range was 135 to 168 months) and five years' supervised release and ordered Taylor to pay a $100 special assessment. The sentence was based on a total offense level of 30 and a criminal history category of IV. The district court noted that Taylor's counsel made "a good and appropriate" argument to drop Taylor's criminal history category down to a level III (lowering his range to 108 to 135 months), but the district court was not persuaded that Taylor's criminal history overstated the seriousness of Taylor's offenses or circumstances. That said, the district court did not "see a need to impose the sentence at the high end of the guidelines" and decided to sentence Taylor at "basically the middle of the guidelines." The court stated that, "[i]t's still a stiff sentence, I recognize that. But the 144 months, which is basically the middle of the guidelines, I think represents all of the factors that compute into a fair sentence and are reflected both in the guidelines and in the [§] 3553 elements" as well as the factors raised by Taylor's attorney. Taylor's projected release date is November 2, 2014.

Effective November 1, 2007, the U.S. Sentencing Commission revised U.S.S.G. § 2D1.1 of the sentencing guidelines (Amendment 706), reducing the base offense level in crack cocaine cases by two levels. The amendment was subsequently made retroactive

effective March 3, 2008. Taylor's amended guideline range is now 110 to 137 months based on a total adjusted offense level of 28 and a criminal history category IV.

Taylor believed that because of this amendment he was eligible for a sentence reduction so he filed a *pro se* Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) on March 7, 2008. The district court appointed counsel for Taylor on April 4, 2008, and directed the parties to file briefs on the issue and the U.S. Probation Office to assess Taylor's eligibility for a sentence modification. The probation office found that Taylor appeared eligible for a reduction under the amendment, but questioned whether a reduction was appropriate considering Taylor's "history of violence." The Bureau of Prisons reported that Taylor experienced no disciplinary problems in prison, that he completed a drug education course, and that he paid his special assessment fee.

The district court found Taylor eligible for a reduction on March 24, 2010, but denied his motion stating in a one-page order that:

> . . . the court also finds that a reduction in his sentence is not appropriate because of the nature and seriousness of the danger to the community that would be posed by a reduction in sentence. *See* Application Note 1(B) of U.S.S.G. § 1B1.10. Accordingly, his motion to modify his sentence is **denied**.

Taylor appealed March 30, 2010.

## II. Discussion

We review a district court's decision not to reduce a sentence under § 3582(c)(2) for abuse of discretion. *United States v. Marion*, 590 F.3d 475, 477 (7th Cir. 2009); *United States v. Johnson*, 580 F.3d 567, 570 (7th Cir. 2009). "A court abuses its discretion when it resolves a matter in a way that no reasonable jurist would, or when its decision strikes us as fundamentally wrong, arbitrary, or fanciful." *United States v. Paul*, 542 F.3d 596, 599 (7th Cir. 2008) (citing *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005)). "[T]he court must determine the extent of the reduction, if any, by considering the factors listed in 18 U.S.C. § 3553(a), the movant's conduct while imprisoned, and the risk his early release would pose to public safety." *Marion*, 590 F.3d at 477 (quoting *Johnson*, 580 F.3d at 570). The district court must provide some statement of reasons supporting its decision when imposing the sentence. *Id.* (citing *United States v. Jung*, 473 F.3d 837, 844 (7th Cir. 2007)).

Taylor argues that the district court's explanation for denying him a sentence reduction was not sufficient to allow this court to engage in a meaningful appellate review. Taylor relies primarily on *Marion* for his argument that the district court's "terse" analysis

made it impossible to ensure that the court did not abuse its discretion. *Id.* at 476-77. Taylor believes the district court merely quoted the Application Notes to U.S.S.G. § 1B1.10 and failed to provide supporting facts unique to Taylor.

In *Marion*, the district court denied a § 3582(c)(2) motion on a form order with a single sentence explanation: "As directed by 18 U.S.C. § 358[2](c)(2) the Court has considered the relevant factors in U.S.S.G. § 1B1.10(b) and 18 U.S.C. § 3553(a) and determined a sentence reduction is not appropriate." *Marion*, 590 F.3d at 476. We noted that "the district court need not provide a detailed, written explanation analyzing every § 3553(a) factor." *Id.* at 477 (citing *United States v. Fitzgerald*, 330 F. App'x 611, 612-13 (7th Cir. 2009); *United States v. Harris*, 490 F.3d 589, 596-97 (7th Cir. 2007); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). Rather, the rationale behind requiring a brief statement of reasons at sentencing compels a similar requirement when deciding a motion to reduce: "Some statement of the district court's reasoning is necessary for this court to be able to meaningfully review its decision." *Id.* We found that the district court failed to sufficiently articulate its reasons for denying the motion. *Id.* Because the "district court aptly considered and thoroughly explained the relevant factors at the time of Marion's original sentencing," an order on a § 3582(c)(2) motion for a sentence reduction "should at least address briefly any significant events that may have occurred since the original sentencing." *Id.* If nothing noteworthy changed concerning the basis for the defendant's sentence, "some simple explanation to that effect will apprise both the defendant and this court of that fact." *Id.* We noted that *Marion* "should not be read to expand what is required of a district court when sentencing a defendant or considering a motion to reduce a sentence under § 3582(c)(2)." *Id.* We had "no intention of counting words or applying some rigid formulation to statements of reasons, particularly on a motion to reduce a sentence." *Id.* Neither form orders nor one-sentence justifications were the problem in *Marion*. The problem was that it was impossible for this court "to ensure that the district court did not abuse its discretion if the order shows only that the district court exercised its discretion rather than showing *how* it exercised that discretion. Some minimal explanation is required." *Id.* at 477-78.

The government distinguishes *Marion*, arguing that unlike the one-sentence form order stating that the district court had reviewed the § 3553(a) factors, the district court here succinctly stated its reasons for denying Taylor's motion: the nature and seriousness of the danger Taylor poses to the community. Only a "minimal explanation" or a "brief statement of reasons" was required to deny Taylor's motion, according to the government. The government also relies on the directive in *United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009), that district courts may not in § 3582(c)(2) proceedings make findings inconsistent with those of the original sentencing court. The government argues that an examination of the initial sentencing hearing transcript shows that Taylor's criminal history adequately supports the court's public safety rationale in denying Taylor's motion.

The government relies on *United States v. Johnson*, 580 F.3d 567 (7th Cir. 2009) (per curiam), a case decided about four months before *Marion*. There we limited Johnson's reduction to three months (he was eligible for a fifteen-month reduction) because of Johnson's extensive criminal history. Johnson appealed, arguing, among other things, that the district court "gave short shrift to the factors" in § 3553(a) by not mentioning his good prison conduct or why the threat he posed to the public outweighed his good behavior. *Id.* at 570. We held that the district court "was not required to explain at length why Johnson's prison record didn't warrant a greater reduction." *Id.* at 570. A statement of reasons consistent with § 3553(a) was sufficient; an analysis of the relationship between each factor was not necessary. *Id.*

The crux of Taylor's appeal is whether it is possible to ensure that the district court did not abuse its discretion in denying Taylor's motion to reduce his sentence under § 3582(c)(2). *Marion* requires "[s]ome minimal explanation" as to "*how* [the district court] exercised [its] discretion," 590 F.3d at 478, so the reviewing court can ensure that the district court did not abuse its discretion. In Taylor's case, the district court cited "the nature and seriousness of the danger to the community that would be posed by a reduction in sentence" as the reason for denying Taylor's sentence modification motion. Taylor believes that the district court simply quoted the Application Notes to U.S.S.G. § 1B1.10(b) without citing any of Taylor's unique supporting facts. In other words, Taylor believes that *Marion* requires district courts to cite specific reasons and then connect, or apply, those specific reasons to facts to the defendant.

Taylor reads too much into *Marion*. The problem in *Marion* was that the statement – that the district court "considered the relevant factors . . . and determined a sentence reduction is not appropriate" – prevented this court from knowing which "relevant factors" were relied upon. There was thus no way for this court to ensure that the district court did not abuse its discretion. Here, we know the reasons upon which the district court relied: the nature and seriousness of the danger Taylor poses to the community.

In *Johnson*, the district court went somewhat further than the court in Taylor's case in explaining the reasons for denying a sentence reduction. The *Johnson* court cited his "extensive criminal history and repeated serious driving offenses," showing "that he posed a risk to the community." 580 F.3d at 569-70. This statement expounds a bit more on Johnson's background compared to the statement applicable to Taylor, but it is not materially different. The *Johnson* court did not discuss specific incidents in Johnson's record. Nor did the court connect or link the reason for denial to specific facts in Johnson's background. And the court did not have to in order for the reviewing court to review the district court's exercise of discretion.

The district court's statements regarding Taylor's sentence modification motion are similarly adequate and consistent with *Marion*'s requirement that a court show "*how* it exercised" its discretion, rather than just showing "that the district court exercised its discretion." *Marion*, 590 F.3d at 478. The district court did not give specifics regarding the nature and seriousness of the danger Taylor posed to the community, but under *Marion* the district court did not have to; all that was required was a "minimal explanation." The district court's statement of reasons for denying Taylor's motion explains how it exercised its discretion using the 18 U.S.C. § 3553(a) factors. The district court "was not required to explain at length why [the defendant's] prison record didn't warrant a greater reduction." *Johnson*, 580 F.3d at 570. And *Marion* does not prohibit one-sentence explanations or form orders. Only minimal explanations are required. And that is what the district court did in denying Taylor's motion.

The record here is replete with evidence supporting the district court's conclusion that "a reduction in his sentence is not appropriate because of the nature and seriousness of the danger to the community that would be posed by a reduction in sentence." Taylor has a history of aggressive criminal activity that began at age 14 when police arrested him for auto theft, fleeing law enforcement, and criminal trespass. At 16, while on probation, Taylor committed involuntary manslaughter during a confrontation with another man. At 20, Taylor was convicted of criminal trespass and received 365 days in prison, with all but two of the days suspended. Less than a year after this sentence, police arrested Taylor for operating a motor vehicle while intoxicated (an incident where Taylor's flight from police ended when he collided his vehicle with another parked car; Taylor's license was indefinitely suspended at the time). At 23, Taylor was involved in a shootout in a residential neighborhood, during which Taylor's friend was shot in the head and killed, resulting in Taylor's convictions for criminal recklessness and carrying a handgun without a license. Taylor's current prison sentence for conspiracy to possess with intent to distribute cocaine occurred while he was on parole for the convictions for criminal recklessness and carrying a handgun without a license.

The district court's brief explanation – that reducing Taylor's sentence would not be appropriate "because of the nature and seriousness of the danger to the community that would be posed by a reduction in sentence" – harks back to the district judge's extended remarks at the sentencing hearing and provides sufficient information regarding the same judge's exercise of discretion in denying Taylor a sentence reduction.

*Marion* also requires district courts, on motions for sentence reductions pursuant § 3582(c)(2), to "at least address briefly any significant events that may have occurred since the original sentencing." 590 F3d at 477. If nothing noteworthy changed concerning the basis for the defendant's sentence, "some simple explanation to that effect will apprise both the defendant and this court of that fact." *Id.* Taylor argues that if circumstances changed

since the district court sentenced Taylor nearly five years ago, the court should explain those changes. But if nothing changed, Taylor argues he should get the benefit of the two-level reduction because the district court based his sentence on the guidelines and set his sentence almost in the middle of the old pre-amendment guideline range applicable to Taylor.

A review of the transcript from the original sentencing hearing indicates that Taylor's violent history drove the district court to give Taylor "a stiff sentence" below the middle of the then-existing guidelines. The district court's discussion of Taylor's criminal history, and its decision to place his sentence below the middle of the then-existing guidelines, indicates that the court considered Taylor's history of violence. That violent history factored into the court's sentence that, under the old guidelines, seemed neither lenient nor extreme. In fact, the sentence was moderate under the guidelines's framework: it was nine months above the basement of Taylor's applicable range and 24 months below the range's ceiling. A sentence directly in the middle of Taylor's then-applicable range (135 to 168 months) would have been 151.5 months. But now Taylor's original 144-month sentence is above the ceiling of Taylor's recommended range due to the amendment. And the record does not indicate that Taylor has had any behavioral problems since his original sentencing. Thus, Taylor believes that a sentence seven months above the amended guidelines is inappropriate.

There is some indication in the record that the sentencing range recommended by the guidelines prompted the district court to find an appropriate sentence below the middle of Taylor's then-existing guideline recommendation ("But I don't see a need to impose the sentence at the high end of the guidelines at 168 months."). But the sentencing hearing transcript gives a stronger indication that the danger Taylor posed to his community drove the district court's decision to find 144 months an appropriate sentence ("So what's the matter? I mean, how big a stick does it take to get your attention? You have to be hit over the head with a log before you get it?"). We examine the entire record, including the sentencing transcript, to determine the district court's intent, not just limited phrases taken out of a case's context. *See United States v. Marvin*, 135 F.3d 1129, 1138 (7th Cir. 1998). When it came down to it, the district court found that "144 months, which is basically in the middle of the guidelines, . . . represent[ed] all of the factors that compute into a fair sentence and are reflected both in the guidelines and in the [§] 3553 elements." This two-year reduction off the top of Taylor's guideline range took into account the factors Taylor raised at his original sentencing hearing, including his drug addiction. Although the guidelines that applied to Taylor's sentence at the time influenced the district court, the guidelines were not the element driving the district court's decision to impose the 144-month sentence.

Rather, it was Taylor's history of violence that compelled the district court to impose the 144-month sentence. The district court stated at the sentencing hearing that:

> . . . unless you want to play out this tragedy to your dying breath, you've got to make some changes. And unfortunately, the penalties you face now are a way to force on you the necessity of making some changes because what society is saying with these stiff penalties is "We can't take this anymore, we can't trust Mr. Idris Taylor to do this for himself. We have to protect the rest of society until he gets stabilized."
>
> And it also says to everybody else out there there's a big price to pay for this. And that's what happened here. It's all sort of accumulated.

In denying Taylor's sentence modification, the district court cited the same danger to the community posed by Taylor's release from prison. That suggests that Taylor poses the same danger to the community that justified his original 144-month sentence. The 144-month sentence keeps Taylor away from the community for that specified time and also gives him the time necessary to rehabilitate himself and to gain skills, training, and maturity so that he is no longer a danger to his community. Nothing about Taylor's circumstances since his original sentencing changed this factor.

Taylor also argues that if the district court was astounded by his history of violence, it would have sentenced Taylor at the top of, or above, the guideline sentencing range. We do not believe that such an extreme sentence is necessary to reflect the district court's judgment that Taylor posed an unusual danger to his community. Implicit in the district court's decision to deny Taylor a sentence modification is the fact that Taylor has a violent past and has been a danger to his community. The fact that the record does not indicate that Taylor's problem with violence has increased, or that he has not experienced disciplinary problems in prison, does not change the equation that drove the district court's original judgment: Taylor has been a violent person who posed a threat to his community. Thus, the district court found that a 144-month sentence was necessary at sentencing and that a 144-month sentence continues to be necessary.

Taylor's reply brief cites *United States v. Neal*, 611 F.3d 399 (7th Cir. 2010) (published July 6, 2010, after Taylor submitted his opening brief) in support of his argument that the district court's explanation was insufficient. In *Neal*, the district court first denied Neal's motion to reduce his sentence, explaining that:

> The Court declines to exercise its discretion to reduce Defendant's sentence. A sentence of 137 months is necessary to promote this defendant's respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. Had the guideline amendment been in effect when the original sentence was imposed, the Court would have imposed a sentence of at least 137 months.

*Id.* at 400. Two weeks later, the district court amended its explanation with some minimal modifications of the original paragraph:

> The Court declines to reduce the previous term of imprisonment. If the guideline amendment had been in effect when the original sentence was imposed, the Court would have imposed a sentence of at least 137 months under an advisory guideline system. The Court finds that a sentence reduction is not warranted. A sentence of 137 months is necessary to promote this defendant's respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

*Id.* The district court also added the following paragraph:

> Moreover, Defendant's post-sentencing conduct does not warrant a reduction. Specifically, prison officials informed the Court that in August 2008, Defendant was found guilty in an administrative hearing for the second time of masturbating in the presence of a female corrections officer. This shows disrespect for the law in general and poor impulse control in particular. He continues to be insubordinate and disrespectful toward prison officials and, as things stand now, it appears that he has almost no chance of a successful period of supervised release. The additional incarceration is needed to give him time to accept and adjust to the norms of society and authority.

*Id.* at 400-01.

On appeal, we noted that had the district court's first statement been the complete statement, "the outcome would be straightforward." *Id.* at 401. Judges may take as a given

the guideline calculations made at sentencing hearings and adjust them only for retroactive changes. Evidentiary hearings are usually unnecessary because the judge may rely on the prior resolution of factual disputes. Neither § 3582(c)(2) nor the Constitution required the judge to conduct a full resentencing in response to Neal's motion. But Neal argued that he was entitled to advance notice of the fact that the judge would rely on the information in the second paragraph of the amended explanation.

We rejected Neal's argument that the district court had to notify defendants "of the proposed action and its rationale before announcing it." *Id.* But we also found that nothing in the record reflected the information cited in the amended explanation's second paragraph. Thus, Neal did not have an opportunity to dispute contestable factual propositions that affected his sentence or to bring in "evidence of his own that would call into question the judge's understanding of his record or cast his intra-prison conduct in a better light." *Id.* at 402.

Taylor argues that *Neal* implies that the original explanation standing alone was not enough to support the denial of a reduced sentence because if the original explanation was sufficient, the elaboration two weeks later would be mere surplusage and make a remand unnecessary. Taylor's reliance on *Neal* is misplaced. *Neal* did not find that the original explanation for denying the sentence reduction motion was insufficient. Rather, we simply said that "[i]f the district court's first explanation were the complete one, the outcome would be straightforward." *Id.* at 401. The problem in *Neal* was that the district court's second explanation for denying the sentence reduction motion referenced facts outside the record. This denied Neal a chance to contest the facts upon which the district court based its second explanation. *Neal* does not indicate that the original explanation was insufficient; rather, had it been the only statement, "the outcome would be straightforward." Likewise for Taylor, the district court's explanation for denying his sentence modification motion on grounds that he represents a danger to his community was sufficient for purposes of review.

Accordingly, the district court did not abuse its discretion in denying Taylor's § 3582(c)(2) motion. The judgment of the district court is AFFIRMED.