NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0145n.06

Nos. 16-3380/3406

FILED
Mar 07, 2017
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHAUN SMITH and LOWRELL NEAL, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, MOORE, and GIBBONS, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendants Shaun Smith and Lowrell Neal each pleaded guilty to involvement in a drug-trafficking conspiracy. The district court sentenced Smith to 72 months' imprisonment, to be followed by three years of supervised release, and Neal to 105 months' imprisonment and three years of supervised release. Both Smith and Neal appealed their sentences. Because we find that the district court did not err when it applied the career-criminal enhancement to Smith's sentence and that the court's consideration of confidential proffers during Neal's sentencing was, at most, harmless error, we affirm the judgments of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Lowrell Neal pleaded guilty to violations of 21 U.S.C. §§ 841(a)(1) and 846. His plea agreement provided that he "obtained large quantities of heroin and cocaine" from

various suppliers and that he and others then distributed the drugs in Ohio. Neal's plea agreement also stated that he supplied heroin and cocaine to others for distribution, maintained "trap houses," and used surveillance systems to thwart law enforcement. Indeed, Neal appears to have been one of the central figures in the conspiracy. The plea agreement stipulated that Neal was responsible for between 80 and 100 grams of heroin, corresponding to a base offense level of 22 under the United States Sentencing Guidelines. Neal's presentence report calculated his total offense level to be 21, with a criminal history category of VI, leading to an advisory sentencing range between 77 and 96 months.

During sentencing proceedings, however, the district court determined that the amount of heroin to which Neal stipulated in his plea agreement was inconsistent with the factual basis for the plea and his central role in the conspiracy. Because of this, the district court directed the probation officer to review confidential proffers in the case and to provide a better estimate for the quantity of heroin for which Neal could be held responsible. The district court did not make the contents of those proffers available to Neal  (*id.*), and Neal objected both to the use of the proffers and to the district court's refusal to provide the defense with the information contained in the proffers.

The district court nevertheless relied upon the proffers and raised Neal's total offense level to 31, which, with a criminal history category of VI, resulted in a sentencing range between 188 and 235 months. The district court determined, however, that this range was actually overstated the seriousness of Neal's conduct and sentenced him instead to 105 months' imprisonment. The district court recognized that it found Neal responsible for a larger quantity of drugs than the plea agreement stipulated, but indicated that even under the base offense level set by that stipulation, the court would have imposed the same sentence based on Neal's conduct

in the case. Neal appeals his sentence, arguing that the district court violated his rights by relying on information from the confidential proffers, thus rendering his sentence procedurally unreasonable and requiring a remand for resentencing.

Shaun Smith also pleaded guilty to violating provisions of 21 U.S.C. §§ 841(a)(1) and 846 and admitted that he was an "enforcer" for a drug-trafficking organization, that he received heroin from others for distribution, that he supplied small quantities of heroin to a co-conspirator for distribution, and that he committed two assaults as part of the conspiracy. Smith's plea agreement stipulated to a base offense level of 18, and his presentence report specified a total offense level of 29 with a criminal history category of VI. Smith's presentence report also determined that he was a career offender (*id.*) and calculated an advisory Guidelines range of 151 to 188 months. In his plea agreement, Smith reserved the right to appeal the district court's determination of the career-offender status.

In his sentencing memorandum, Smith conceded that two prior convictions he received in Illinois, in 1998 and 2002, technically counted as predicate controlled-substance offenses that would justify enhancement of his sentence under the Guidelines' career-offender provision, USSG § 4B1.1. Nevertheless, Smith argued that the district court should decline to enhance his sentence, both because of disparities among states' sentences for Smith's conduct—arguing that the same conduct in Ohio, for example, would not meet the Guidelines' requirement that it be punishable by imprisonment for a term exceeding one year—and because Smith actually served less than one-year prison terms following his convictions. The district court rejected Smith's arguments and found that Smith was a career offender. On this basis, the district court determined that Smith's sentencing range was between 151 and 188 months but varied downward significantly to impose a 72-month sentence, finding that the Guidelines range

overstated Smith's need for punishment, in part because he played a relatively small role in the conspiracy. The district court also considered disparity issues when determining Smith's sentence.

On appeal, Smith renews his objection to the application of the career-offender enhancement. In addition to the disparity arguments raised before the district court, Smith now argues (contrary to the position he took in his sentencing memorandum) that his prior Illinois convictions *cannot* serve as predicate offenses because the Illinois statute under which he was convicted covers conduct broader than the conduct covered by the Guidelines.

## DISCUSSION

**Neal's Sentence**

Neal argues that the district court's use of the confidential proffers violated both his right to due process and Federal Rule of Criminal Procedure 32(i)(1)(B), and that his sentence was therefore procedurally unreasonable. "A sentence is procedurally unreasonable if, among other things, the district court fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks and alterations omitted)). Because Neal preserved his objections to the district court's use of confidential proffer statements, we review his procedural-reasonableness challenge for an abuse of discretion. *Id.* We will find an abuse of discretion when we are "left with the definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989). Clearly, committing an error of law constitutes abuse of discretion. *United States v. Clay*, 667 F.3d 689, 694 (6th Cir. 2012).

The government concedes—as it must, in light of our precedent—that the district court erred when it used undisclosed proffer statements to determine Neal's Guidelines range. (Appellee Br. at 38)  As we held in *United States v. Coppenger*, 775 F.3d 799, 806–07 (6th Cir. 2015), a criminal defendant must be provided adequate access to the information the court will use to calculate a sentence and afforded an opportunity to contest that information.  *See also United States v. Hamad*, 495 F.3d 241, 247–51 (6th Cir. 2007).  Otherwise, without adequate disclosure and access, the information cannot be used to establish a reliable sentence.

However, this concession does not end our inquiry because, "even if a procedural sentencing error occurs, that error is not subject to remand for resentencing if the error is harmless."  *Davis*, 751 F.3d at 773.  "Sentencing errors are harmless where this court is convinced that the error at sentencing did not cause the defendant to receive a more severe sentence than would have existed without the error."  *Id.* (internal quotation marks omitted).

When sentencing Neal, the district court made clear on the record that the sentence would have been the same regardless of Neal's base offense level (which was increased on the basis of the proffers).  That is to say, without the proffers, the district court would have varied upward from the sentence if it had set the offense level as suggested in the plea agreement, in order to have the sentence accurately reflect consideration of the sentencing factors of § 3553(a).  *See United States v. Richardson*, 437 F.3d 550, 553–54 (6th Cir. 2006).  The district court adequately explained its reasoning for arriving at Neal's sentence, and in this case, the district court's reasoning was sound, both with regard to the downward departure from what the district court believed the correct guidelines calculation to be and with regard to the upward departure from what Neal maintained was the correct calculation.  *See Pepper v. United States*, 562 U.S. 476, 490 (2011) ("[A]lthough a sentencing court must 'give respectful consideration to the

Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well.'" (quoting *Kimbrough v. United States*, 552 U.S. 85, 101 (2007))).

The record reflects that Neal's case is one of the "unusual" cases contemplated by the Supreme Court in which the district court's improper calculation of the relevant Guidelines range nevertheless does not prejudice the defendant. *Molina-Martinez v. United States*, 578 U.S. \_\_\_, 136 S. Ct. 1338, 1346–47 (2016); *see also United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010).

**Smith's Sentence**

We first consider Smith's argument that convictions under 720 Ill. Comp. Stat. § 570/401 categorically cannot serve as predicate offenses for the purposes of career-offender enhancements under the Guidelines. The government contends that plain-error review applies to Smith's argument that the Illinois statute under which he was convicted previously is broader than the Guidelines, because this argument is raised for the first time on appeal. (Appellee Br. at 17) Regardless of whether we review Smith's argument for plain error or *de novo*, his argument fails.

The Guidelines define a "controlled substance offense" that can serve as a predicate offense for enhancement under USSG § 4B1.1[1] as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

---

[1] USSG § 4B1.1 provides:
> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.2(b).

The record indicates that Smith twice pleaded guilty to violating the Illinois Controlled Substances Act, which prohibits the "[m]anufacture or delivery, or possession with intent to manufacture or deliver, [of] a controlled substance, a counterfeit substance, or controlled substance analog." 720 Ill. Comp. Stat. § 570/401. On both occasions, Smith was convicted for violating § 570/401(d).

Smith first argues that his prior convictions cannot serve as predicate offenses for the purposes of a career-criminal enhancement, because "delivery" under the Illinois statute is not covered by the Guidelines language, and the statute therefore criminalizes conduct beyond the contemplation of the Guidelines. The Guidelines define a controlled-substance offense as one "that prohibits the . . . import, export, distribution, or dispensing of a controlled substance" or the possession of a controlled substance with the intent to do so, but does not explicitly prohibit "delivery." USSG § 4B1.2. However, the Illinois statute defines delivery as "the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration, whether or not there is an agency relationship." 720 Ill. Comp. Stat. § 570/102. As a result, this element of the offense falls squarely within the Guidelines definition and does not cover conduct broader than that covered by the Guidelines.

Smith next argues that because the list of controlled substances criminalized under Illinois law includes a substance that is not prohibited under federal law, his prior convictions cannot serve as predicate controlled-substance offenses. Smith's contention in this regard draws on the line of cases beginning with *Taylor v. United States*, 495 U.S. 575 (1990), and culminating in the Supreme Court's recent decision in *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243 (2016). Both cases involved sentences enhanced under the Armed Career Criminal

Act (ACCA), 18 U.S.C. § 924, based on the defendant's prior convictions in state courts. In each instance, the sentencing courts were faced with determining whether the prior convictions were for "violent felonies." The analysis employed in these cases also applies to the determination of whether a prior conviction qualifies as a predicate offense for the purposes of the career-offender enhancement under USSG § 4B1.2(a)(2). *See United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008) (holding that "parallel provisions in the definitions of a 'violent felony' under the ACCA and a 'crime of violence' under [the Guidelines] should be interpreted in a consistent manner").

In the ACCA framework, the central inquiry is whether the elements of the offense for which a criminal defendant was convicted "sufficiently match" the elements of the so-called "generic offense" that is a crime of violence. *Mathis*, 136 S. Ct. at 2248. This analysis employs the categorical approach—if the elements of the statute of conviction are the same as or narrower than the generic form of the offense, it qualifies as a predicate offense. If not, regardless of the actual conduct of the defendant that led to conviction, it is not a predicate offense. *Id.* at 2247–48. In *Mathis*, the Court noted that a statute may define a crime with a single set of elements, or it may define multiple crimes by listing multiple, alternative elements disjunctively. In the latter case, the statute is said to be "divisible." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In dealing with a divisible statute, a sentencing court must determine which of the alternative elements are "integral" to the defendant's conviction in order to decide which crime was the offense of conviction. In aid of this determination, the sentencing court may invoke the "modified categorical approach," which permits it to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements the defendant was convicted of . . . [and] then compare the crime, as

the categorical approach commands, with the relevant generic offense." *Mathis*, 136 S. Ct. at 2249 (citing *Shepard v. United States*, 544 U.S. 13 (2005)). If, however, an alternately phrased statute "enumerates various factual *means* of committing a single element," a prior conviction under that statute cannot support a career-criminal enhancement under the Guidelines. *Id.* at 2249-50 (emphasis added).

Smith and the government disagree about the Illinois statute under which Smith was convicted. Does it set out multiple alternative elements and, thus, divisible crimes, or merely alternative means of committing a single offense? Smith argues, in effect, that the Illinois statute prohibiting delivery of controlled substances is not divisible and that, because it criminalizes some substances not barred by federal law, it is broader than the parallel federal statute. It follows, Smith contends, that offenses listed in the state statute cannot be predicate offenses, including the two prior offenses for which he was convicted under that statute. The government counters that the relevant statute is divisible under *Mathis*, thereby allowing consideration of the *Shepard* documents to determine that the elements of Smith's offense are within the conduct covered by the Guidelines.[2]

Because there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that Illinois may have criminalized the "manufacture, import, export, distribution, or dispensing" of some substances that are not criminalized under federal law does not prevent conduct prohibited under the Illinois statute

---

[2] In *Shepard*, the Supreme Court discussed which types of documents may, if necessary, be used to establish the crime for which a defendant was previously convicted. The Court limited those documents to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26. Smith's charging documents are in the record as attachments to his sentencing memorandum.

from qualifying, categorically, as a predicate offense. Smith's prior convictions under 720 Ill. Comp. Stat. § 570/401(d) thus are predicate offenses.

We next review *de novo* Smith's legal argument that the application of the career-offender enhancement in his case violates due process. He contends that because his predicate offenses were for minor conduct, involving less than a gram of crack cocaine, and because different states would punish such conduct differently—making convictions in some states like Illinois predicate offenses, but not in others like Ohio—it would violate due process to use them as the basis for enhancement.

That Smith's conduct was relatively minor and may have garnered a sentence less than one year in jurisdictions other than Illinois does not prevent his convictions from serving as predicate offenses. The Guidelines language counts as predicate offenses those "*punishable* by imprisonment for a term exceeding one year," USSG § 4B1.2 (emphasis added), not those for which more than a year was actually served. USSG § 4B1.2 cmt. n.1 (prior felony conviction "means a prior adult federal or state conviction for an offense punishable by . . . imprisonment for a term exceeding one year, regardless of . . . the actual sentence imposed"). *See Burgess v. United States*, 553 U.S. 124, 128 (2008); *see also Barde v. United States*, 224 F.2d 959, 959 (6th Cir. 1955) (noting that "it is not actual punishment imposed but that which the statute authorizes which determines whether a crime is a felony or a misdemeanor"); *United States v. Garza*, 999 F.2d 1048, 1051–52 (6th Cir. 1993) ("[T]he Commission acted within its authorization in making career offender determinations depend upon the existence of prior convictions for categories of felonies . . . . Garza's previous convictions were in state courts where state laws relating to offenses and sentencing controlled. It is immaterial that he received lenient sentences in state courts.").

Other courts that have considered similar arguments regarding disparities in drug-offense convictions have also rejected them. *See, e.g.*, *United States v. Fink*, 499 F.3d 81, 87 (1st Cir. 2007) (holding that the fact that "the definitions of crimes that may vary from state to state is insufficient to conclude that [the enhancement based on prior convictions] violates the equal protection of the law"); *United States v. Maynie*, 257 F.3d 908, 919 n.5 (8th Cir. 2001) (same).

The reasoning underlying these cases is persuasive here. It recognizes that "[u]nder our federal system, the States possess primary authority for defining and enforcing the criminal law." *United States v. Lopez,* 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted). As the Ninth Circuit has explained, "Because states are primarily responsible for criminal law enforcement, there is no pressing need for national uniformity in the sentencing enhancement context, and it is not surprising that the courts of appeals interpreting the Sentencing Guidelines have incorporated variations in state punishments for drug offenses." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 913–14 (9th Cir. 2004). The fact that different states punish the possession of a certain amount of a controlled substance differently, thus making the same conduct a predicate for a career-criminal enhancement for some defendants but not for others, does not give rise to a constitutional challenge to the Guidelines. *See United States v. Millsaps*, 157 F.3d 989, 996 (5th Cir. 1998) ("Congress was well aware that different states classify similar crimes differently. Congress'[s] deference to the states in this matter is not irrational.") (quoting *United States v. Kubosh*, 63 F.3d 404, 407 (5th Cir. 1995)); *cf. United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001) ("A wide disparity between sentencing schemes of different jurisdictions does not violate equal protection, even where two persons who commit the same crime are subject to different sentences.").

## CONCLUSION

For the reasons set out above, we AFFIRM the judgments of the district court.