17-757-cr
*United States v. Townsend*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2017

No. 17-757-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

TYREK TOWNSEND,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of New York

ARGUED: MARCH 7, 2018
DECIDED: JULY 23, 2018

Before: CABRANES and CARNEY, *Circuit Judges*, and VILARDO, *District Judge*.[*]

———

For purposes of United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 4B1.2(b), "[t]he term 'controlled substance offense' means an offense under federal or state law . . . that prohibits . . . distribution . . . of a *controlled substance*." (emphasis added).

This case presents the question of how to define "controlled substance" in § 4B1.2(b): Does that term include only substances controlled by federal law under the Controlled Substances Act ("CSA")? Or does it also include substances regulated by state law but not by federal law?

Because we find that "controlled substance" refers exclusively to substances controlled by the CSA, we **VACATE** the judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Chief Judge*) and **REMAND** for resentencing.

———

> DAVID K. KESSLER, Assistant United States Attorney (Jo Ann M. Navickas, Assistant United States Attorney, *on the brief*), *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee*.

———

[*] Judge Lawrence J. Vilardo, of the United States District Court for the Western District of New York, sitting by designation.

DANIEL HABIB, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant*.

---

LAWRENCE J. VILARDO, *District Judge*:

For purposes of United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 4B1.2(b), "[t]he term 'controlled substance offense' means an offense under federal or state law . . . that prohibits . . . distribution . . . of a *controlled substance*." (emphasis added).

This case presents the question of how to define "controlled substance" in § 4B1.2(b): Does that term include only substances controlled by federal law under the Controlled Substances Act ("CSA")? Or does it also include substances regulated by state law but not by federal law?

Because we find that "controlled substance" refers exclusively to substances controlled by the CSA, we **VACATE** the judgment of the United States District Court for the Eastern District of New York (Dora L. Irizarry, *Chief Judge*) and **REMAND** for resentencing.

## I. BACKGROUND

On November 21, 2015, New York Police Department officers saw the Defendant-Appellant, Tyrek Townsend ("Townsend"), engage in what they believed to be suspicious, drug-related activity. The officers arrested Townsend and, in the search incident to his arrest, recovered a loaded 9-millimeter semiautomatic weapon. A later search at the police precinct yielded six partial tablets of alprazolam, also known as Xanax, a federally controlled substance.

Townsend was indicted by a federal grand jury on three counts: (1) possessing alprazolam with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(2); (2) possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On September 12, 2016, Townsend pleaded guilty to counts one and three.

The crime of being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1), has a Guidelines base offense level of 20 if the defendant committed the offense after sustaining one felony conviction for either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(4)(A) (2016). The base offense level increases from 20 to 24 if the defendant has two such prior convictions. U.S.S.G. § 2K2.1(a)(2).

The presentence investigation report ("PSR") prepared before sentencing determined that U.S.S.G. § 2K2.1(a)(2) applied to Townsend and that the appropriate base offense level was 24. It based that conclusion on two of Townsend's prior convictions: one under New York Penal Law ("NYPL") section 220.31 for fifth-degree criminal sale of a controlled substance and another under New Jersey law for third-degree aggravated assault with a deadly weapon.[1]

Townsend objected to the higher base offense level. He argued that his prior controlled substance offense under New York law was

---

[1] Townsend initially objected to using both prior convictions in determining his base offense level. At the time of sentencing, however, Townsend withdrew his objection to the New Jersey aggravated assault conviction but maintained that his New York controlled substance conviction could not support the higher offense level. So Townsend argued that his base offense level was 20 because the New York controlled substance conviction did not qualify as a "controlled substance offense" under Guidelines § 2K2.1(a)(2).

substantively broader than its federal counterpart and therefore could not be used to increase the offense level and his subsequent calculated Guidelines range. More specifically, he noted that NYPL section 220.31 prohibits the sale of Human Chorionic Gonadotropin ("HCG"), a substance controlled under New York law but not controlled under the CSA. Because the New York statute criminalized the distribution of a substance that was not proscribed by federal law, Townsend argued, a conviction under that statute would not increase his federal Guidelines range. The government and the district court disagreed, however.

According to the district court, which adopted the reasoning of the PSR, because the Guidelines define a qualifying predicate controlled substance offense as one "under federal or state law," all state drug convictions necessarily qualify. Appellant's App. 238-39. And for that reason, in part, the court found that Townsend's prior New York drug conviction subjected him to a heightened base offense level under § 2K2.1(a)(2).

## II. DISCUSSION

We review the sentence imposed by a district court for reasonableness. *United States v. Cavera*, 550 F.3d 180, 187-88 (2d Cir. 2008) (en banc). But we review *de novo* a district court's specific determination that a "prior offense was a controlled substance offense, as defined by U.S.S.G. § 4B1.2." *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008) (internal quotation marks omitted).

Calculating a defendant's sentencing range under the Guidelines includes far more than simply considering the crime of conviction. Indeed, for some crimes, the base offense level under the Guidelines—i.e., the starting point—increases because of certain convictions the defendant previously sustained. *See, e.g.*, U.S.S.G. § 2K2.1(a)(2). But such enhancements are limited by considerations of

fairness and due process.  *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907-08 (2018).

For starters, the Guidelines language must make clear—to the court, to the defendant, and to the government—the basis for a sentencing enhancement.  Thus, to determine whether a prior conviction increases the defendant's base offense level, courts begin with the language of the Guidelines.  *See, e.g.*, *Savage*, 542 F.3d at 963-64 (beginning sentencing enhancement analysis with Guidelines language).  If the Guidelines are clear, there is little more to do; if they are ambiguous, however, the courts have crafted an interpretive scheme that honors our federal sentencing system while preserving the fairness owed to the defendant.

## A. Interpreting Guidelines §§ 2K2.1 and 4B1.2(b)

Section 2K2.1 of the Guidelines adopts the definition of a "controlled substance offense" in § 4B1.2(b).  U.S.S.G. § 2K2.1, Application Note 1.  Section 4B1.2(b), in turn, defines a controlled substance offense as

> An offense under *federal or state law*, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (emphasis added).

6

The district court here found this language to be clear and unambiguous. Because state controlled substance offenses can be valid predicate offenses, the court reasoned, all state controlled substance offenses are incorporated into the sentencing enhancement provision. In the words of the court, "[t]he operative term is 'or state law.' So that particular guideline actually provides that a specific violation of state law . . . would make it a controlled substance offense under the guideline." Appellant's App. 238-39.

The district court here was not the only one in our Circuit to reach that conclusion. In *United States v. Laboy*, 16-CR-669 (AJN) 2017 WL 6547903 (S.D.N.Y. Dec. 12, 2017), the district court found that "the phrase 'controlled substances' has no inherent meaning beyond a governing entity's decision to control certain substances and not others." *Id.* at *3. Because "state offenses would carry with them a reference to their own state drug schedules," and because state convictions clearly qualify, the court concluded that a conviction for an offense involving a substance controlled only under state law would qualify as well. *Id. But see United States v. Barrow*, 230 F. Supp. 3d 116, 123-24 (E.D.N.Y. 2017).

On appeal, the government echoes the district court's conclusion that the plain language of the Guidelines triggers application of the § 2K2.1(a) Guidelines enhancement based on any predicate state controlled substance offense.[2] "Had the [Sentencing]

---

[2] In the proceedings below, the government's primary argument for qualifying the conviction as a predicate offense rested on the divisibility of NYPL section 220.31. Because that statute is "divisible," the government argued, and based on the government's assertion that Townsend's prior conviction was for possessing heroin and not HCG, his prior conviction qualified. This Court's subsequent decision in *Harbin v. Sessions*, 860 F.3d 58, 61 (2d Cir. 2017), however, found NYPL section 220.31 to be indivisible. *See infra* section II.B.1. So the government has changed direction on appeal.

Commission intended to restrict a 'controlled substance offense' to only crimes involving a substance controlled under federal law, it would have done so." Br. Appellee 15-16. The government cites examples in the Guidelines where the definition of a term is expressly limited to federal law. *Id.* at 16-18; s*ee also Laboy*, 2017 WL 6547903, at *3. In other words, in the government's view, the absence of the word "federal" next to "controlled substance" means that the Sentencing Commission intended for sentencing courts to consider convictions for sale of a substance controlled only under state law.[3]

But the government has it backwards: Because of the presumption that federal—not state—standards apply to the Guidelines, discussed in more detail below, if the Sentencing Commission wanted "controlled substance" to include substances controlled under only state law to qualify, then it should have said so.

And the Guidelines language is not as clear as the government and the court below made it out to be. Although a "controlled substance offense" includes an *offense* "under federal or state law," that does not also mean that the *substance* at issue may be controlled under federal or state law. To include substances controlled under only state law, the definition should read ". . . a controlled substance *under federal or state law*." But it does not.

It may be tempting to transitively apply the "or state law" modifier from the term "controlled substance offense" to the term

---

[3] In fact, even though the government now asserts that Townsend's interpretation of controlled substance defies "the plain text of [§ 4B1.2(b)]" Br. Appellee 14**,** the government conceded in the proceedings below the very point it now contests. *See* Appellant's App. 187 ("[I]f the defendant was convicted of selling 'human chorionic gonadotropin,' a substance that was a 'controlled substance' under New York law but not federal law then the Drug Conviction would not count as a predicate felony.") (citation omitted).

"controlled substance." But to do so would undermine the presumption that federal standards define federal sentencing provisions. Because the Guidelines presume the application of federal standards unless they explicitly provide otherwise, the ambiguity in defining "controlled substance" must be resolved according to federal—not state—standards.

### 1. The *Jerome* presumption

As a general rule, commonly called the *Jerome* presumption, the application of a federal law does not depend on state law unless Congress plainly indicates otherwise. *See Jerome v. United States*, 318 U.S. 101, 104 (1943). Although not a federal statute, the Guidelines are given the force of law, *United States v. Kirvan*, 86 F.3d 309, 311 (2d Cir. 1996), and arguably have an even greater need for uniform application, *United States v. Savin*, 349 F.3d 27, 34 (2d Cir. 2003). The *Jerome* presumption thus applies equally to the Guidelines. *Savin*, 349 F.3d at 34.

Sentencing a defendant who has prior state convictions involves a complicated "meshing process . . . as we observe two sovereigns competing for their legitimate spheres." *Dickinson v. First Nat'l Bank*, 400 F.2d 548, 549 (5th Cir. 1968) (Goldberg, J.). But if there is any doubt, it is the interest of the state sovereign that must give way because, after all, the Guidelines punish violations of federal law. Stated another way, "the Guidelines should be applied uniformly to those convicted of federal crimes irrespective of how the victim happens to be characterized by its home jurisdiction." *See Savin*, 349 F.3d at 35 (applying the *Jerome* presumption to the Guidelines).

What is more, since *Jerome* was decided the Supreme Court has rejected attempts to impose enhanced federal punishments on criminal defendants in light of a state conviction, when those attempts do not also ensure that the conduct that gave rise to the state conviction

9

justified imposition of an enhancement under a uniform federal standard. *See Taylor v. United States*, 495 U.S. 575, 579, 590-91 (1990) (rejecting argument that "burglary" in Armed Career Criminal Act means "burglary" however a state chooses to define it); *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1570 (2017) (rejecting argument that "sexual abuse of a minor" encompasses all state statutory rape convictions regardless of the state's age of consent, because that definition "turns the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted"). These decisions reinforce the idea that imposing a *federal* sentencing enhancement under the Guidelines requires something more than a conviction based on a state's determination that a given substance should be controlled.

In light of the above, we are confident that federal law is the interpretive anchor to resolve the ambiguity at issue here. Any other outcome would allow the Guidelines enhancement to turn on whatever substance "is illegal under the particular law of the State where the defendant was convicted," a clear departure from *Jerome* and its progeny. *See Esquivel-Quintana*, 132 S. Ct. at 1570. Thus, a "controlled substance" under § 4B1.2(b) must refer exclusively to those drugs listed under federal law—that is, the CSA.[4]

---

[4] We note that our conclusion that § 2K2.1(a) is meant to apply only to substances controlled under federal law is determined by our adherence to the *Jerome* presumption in interpreting the provision's ambiguity. Our analysis under the *Jerome* presumption differs from the approach taken by the Court in *Taylor v. United States* and *Esquivel-Quintana v. Sessions*. In both those cases, the Court defined the "generic" meaning of an offense as contained in a federal enhancement statute to determine whether the defendant's state law offense qualified for the federal enhancement at issue. Because the *Jerome* presumption requires that we consider only controlled substances as defined by federal law, regardless of what

## 2. The interpretation of "controlled substance" by other circuits

In holding that a "controlled substance" refers exclusively to a substance controlled by the CSA, we are in good company. The Fifth, Eighth, and Ninth Circuits have found "controlled substance" in the Guidelines to have the same meaning we now find.[5] *United States v. Gomez-Alvarez*, 781 F.3d 787, 793-94 (5th Cir. 2015); *United States v. Leal-Vega*, 680 F.3d 1160, 1166-67 (9th Cir. 2012); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661-62 (8th Cir. 2011).

According to the Ninth Circuit, "defining the term 'controlled substance' to have its ordinary meaning of a drug regulated by law would make what offenses constitute a drug offense *necessarily* depend on the state statute at issue." *Leal-Vega*, 680 F.3d at 1166 (emphasis in original). Based on that same reasoning, the Fifth Circuit found that the government must "establish that the substance underlying th[e] conviction is covered by the CSA" before a controlled substance conviction can qualify as a Guidelines predicate offense. *Gomez-Alvarez*, 781 F.3d at 793-94 (5th Cir. 2015); *see also Sanchez-Garcia*, 642

the "generic definition" of a controlled substance might be, we need not decipher the generic definition of a controlled substance to resolve this appeal.

[5] These other circuit opinions considered a different section of the Guidelines. They also analyzed the definition of a "drug trafficking offense," rather than a "controlled substance offense." *See, e.g.*, *United States v. Leal-Vega*, 680 F.3d 1160 (9th Cir. 2012). We nonetheless find them instructive because the definitions use virtually identical language incorporating offenses under federal or state law that "prohibit[] the manufacture, import, export, distribution, or dispensing of . . . a controlled substance." *Compare* U.S.S.G. § 2L1.2, *with* U.S.S.G. § 4B1.2(b). We note, however, that our holding applies only to the provision of the Guidelines at issue in this appeal, § 2K2.1(a). We also note that these cases relied on a different interpretive scheme, and that none of them explicitly applied the *Jerome* presumption to the portion of the Guidelines at issue, as we do here.

11

F.3d at 661-62 (finding as overinclusive a California statute that defined controlled substance more broadly than the CSA). *But see United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017) (finding "no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government" for an enhancement under U.S.S.G. § 4B1.2).

### B. Comparing prior state convictions to their corresponding federal crimes

Concluding that "controlled substance" as defined by § 4B1.2(b) of the Guidelines includes only substances controlled under the CSA does not end our analysis. A state conviction will qualify as a predicate offense under § 2K2.1(a) if the state conviction aligns with, or is a "categorical match" with, federal law's definition of a controlled substance. To determine whether the definition matches, we must know the state crime that was committed and compare the elements of that crime to the elements of the corresponding generic federal crime. If a state statute is broader than its federal counterpart—that is, if the state statute criminalizes some conduct that is not criminalized under the analogous federal law—the state conviction cannot support an increase in the base offense level. *See United States v. Jones*, 878 F.3d 10, 15-16 (2d Cir. 2017).

There are two ways to compare state statutes to their generic federal counterpart: the categorical approach and the modified categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016). Which approach a court takes turns on whether the state statute defining the crime of conviction is divisible or indivisible. *Id.* at 2249.

A statute is divisible when it lists elements in the alternative, thereby defining multiple crimes within one statute. *Jones*, 878 F.3d at 16.[6] A divisible statute triggers the modified categorical approach. *Id.*

An indivisible statute, on the other hand, defines only one crime. It may list "various factual means of committing a single element," but it does not list elements in the alternative. *Mathis,* 136 S. Ct. at 2249. An indivisible statute is subject to the categorical approach. *Jones*, 878 F.3d at 16.

Under the categorical approach, because a statute is indivisible, courts look only at the language of the statute, as the statute defines only one crime. But if a statute is divisible, courts do not know by looking only at the text of the statute which alternative version of the

---

[6] For example, in *Jones*, we considered the New York first-degree robbery statute, which defines robbery in four distinct ways:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> 1. Causes serious physical injury to any person who is not a participant in the crime; or
> 2. Is armed with a deadly weapon; or
> 3. Uses or threatens the immediate use of a dangerous instrument; or
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . .

NYPL § 160.15. We found this statute divisible because each of the four subsections of the statute constitutes a distinct crime with distinct elements. *See Jones*, 878 F.3d at 16-17.

statute the defendant may have violated.  *Id.*  Therefore, if the statute at issue is divisible, courts apply the modified categorical approach and consider a very limited set of materials to help determine the specific elements of the crime of conviction.[7]  *Id.*; *Descamps v. United States*, 570 U.S. 254, 261-62 (2013).

Once courts determine the particular elements of the crime of conviction, the analysis is the same for both approaches.  *Mathis*, 136 S. Ct. at 2249 (finding that once courts determine, under the modified categorical approach, which alternative version of the crime was committed, "court[s] can then compare that crime, as the categorical approach commands, with the relevant generic offense").  If the elements of the defendant's prior state conviction are the same as, or narrower than, the generic federal counterpart for that crime, the prior state conviction can affect the defendant's Guidelines range under § 2K2.1(a).  *See Jones*, 878 F.3d at 16.  Conversely, if the elements of the state statute are broader than those in the corresponding federal crime, the prior conviction does not give rise to a sentencing enhancement under § 2K2.1(a).  *See id.*  In other words, a state statute that punishes conduct not criminalized by federal law cannot affect the Guidelines calculation.

---

[7] Out of fairness to the defendant, among other considerations, courts following the modified categorical approach are very careful to limit review of underlying conduct related to the conviction.  *See Jones*, 878 F.3d at 16 ("Statements of 'non-elemental fact' in the records of prior convictions [such as the precise manner in which the crime was committed] are prone to error precisely because their proof is unnecessary. Defendants therefore may have little incentive to ensure the correctness of those details of earlier convictions that could later trigger the unforeseen . . . enhancement.") (internal citations and quotation marks omitted).

### 1. Matching NYPL section 220.31 with the CSA

There is no longer any question that NYPL section 220.31 is indivisible: last year, this Court found exactly that in *Harbin v. Sessions*. 860 F.3d at 61. We found that NYPL section 220.31 "creates only a single crime" with several "factual means by which that crime may be committed." *Id.* at 65.

In finding the statute indivisible, we identified four elements of the crime. The defendant must (1) knowingly and (2) unlawfully (3) sell (4) a controlled substance. *Id.* NYPL section 220.31 thus requires only that a defendant possess a "controlled substance" generally. The particular controlled substance a defendant actually possessed is not an element under the New York Law and need not be proven for a defendant to be convicted of violating this statute. Therefore, our inquiry is limited to whether a "controlled substance" under NYPL section 220.31 is a categorical match with the CSA's definition of a "controlled substance."[8]

An element of a state offense categorically matches its federal counterpart if the state element is "the same as, or narrower than" the federal element. *See Descamps*, 570 U.S. at 257. With respect to controlled substances, that means the state law must criminalize only those substances that are criminalized under federal law. And because the analysis focuses on the "controlled substance" element—not the specific controlled substance underlying the prior state conviction— "we must presume that the conviction rested upon nothing more than the least of the acts criminalized" by the state statute. *Moncrieffe v.*

---

[8] The government's brief might be read as maintaining that the language of the Guidelines clearly incorporates state controlled substances, and therefore the court need not venture into the realm of the categorical approach. For the reasons set forth above, we disagree.

*Holder*, 569 U.S. 184, 190-91 (2013) (internal quotation marks and alterations omitted). If a defendant might be convicted of violating NYPL section 220.31 for conduct that is not prohibited by the CSA, his state conviction cannot qualify as a predicate offense. *See Esquivel-Quintana*, 137 S. Ct. at 1572.

At the time of Townsend's conviction, the New York state drug schedule, section 3306 of the New York Public Health Law, included HCG as a Schedule III controlled substance. *See* N.Y. Pub. Health Law § 3306, Schedule III(7)(g) (listing Chorionic gonadotropin).

HCG is not a controlled substance under the CSA. *Compare* N.Y. Pub. Health Law § 3306, *with* 21 U.S.C. § 802. Therefore, the state statute under which Townsend was convicted sweeps more broadly than its federal counterpart, and his prior conviction under NYPL section 220.31 is not a predicate offense for purposes of increasing his Guidelines range under § 2K2.1(a).

In sum, because Townsend's prior state conviction was for violating an indivisible statute, the categorical approach applies. And because the state statute of conviction criminalizes the sale of a substance not criminalized under federal law, the state statute does not categorically match the federal crime. Consequently, Townsend's prior New York state conviction cannot be a predicate offense under § 2K2.1(a).

### III. CONCLUSION

For the reasons above, we hold that:

(1) The term "controlled substance" in U.S.S.G. § 4B1.2(b) refers exclusively to those substances in the CSA; and

(2) NYPL section 220.31 criminalizes sale of a drug, HCG, that is not included in the CSA, and NYPL section 220.31 therefore

16

cannot be a predicate offense for an enhanced sentence under U.S.S.G. § 2K2.1(a).

Townsend's prior conviction under NYPL section 220.31 therefore does not qualify as a predicate "controlled substance offense." We therefore **VACATE** the District Court's judgment and **REMAND** for resentencing.