19-3937-cr
United States of America v. Richard Lucas

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of August, two thousand twenty-one.

PRESENT: PIERRE N. LEVAL,
JOSÉ A. CABRANES,
MICHAEL H. PARK,
*Circuit Judges*.

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.                                        No. 19-3937-cr

RICHARD LUCAS,

*Defendant-Appellant*,

DOMINIC DANIELS,

*Defendant*.

-----------------------------------------------------------------

FOR APPELLANT:	HERBERT L. GREENMAN, Lipsitz Green Schime Cambria LLP, Buffalo, NY; ROBERT C. SINGER, Singer Legal PLLC, Williamsville, NY.

FOR APPELLEES:	KATHERINE A. GREGORY, Assistant United States Attorney *for* JAMES P. KENNEDY, JR., United States Attorney, United States Attorney's Office, Buffalo, NY.

Upon Defendant's appeal from a judgment of conviction imposed on him in the United States District Court for the Western District of New York (Elizabeth A. Wolford, *Chief Judge*), ON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Following a jury trial, Defendant Richard Lucas, Jr., was convicted of a conspiracy to distribute more than 500 grams of cocaine and sentenced by the district court to a term of 25 years' imprisonment and a $60,000 fine. On appeal, Defendant raises numerous challenges to his conviction and sentence. These include challenges to (1) denial of his motions to suppress evidence, (2) the striking of the co-defendant's name from the indictment as a constructive amendment of the indictment, (3) the admission of evidence pertaining to Defendant's prior involvement in uncharged narcotics distribution activity, and

2

(4) the application of a "career offender" sentencing enhancement under U.S.S.G.

§ 4B1.1(a). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

**I. Motions to Suppress**

"On review of a challenged suppression order, we examine the district court's findings of fact for clear error, reviewing *de novo* questions of law and mixed questions of law and fact." *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018). Defendant's principal argument on appeal is that his initial seizure (and ultimate arrest) by police in a hotel parking lot violated his Fourth Amendment rights, and that all evidence recovered as a result of that arrest should have been suppressed. We disagree.

Traffic stops in which the police temporarily detain an individual, even if only briefly or for a limited purpose, are seizures, which violate the Fourth Amendment if they are "unreasonable" under the circumstances. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. We hold that the district court did not

3

err in finding that the police had (1) probable cause to conduct the initial traffic stop, (2) reasonable suspicion to frisk Defendant during the initial stop, and (3) probable cause to support Defendant's ultimate arrest.

We find no clear error in the district court's finding that, when Defendant's car arrived in the parking lot of the Comfort Inn and Suites Buffalo Airport Hotel, a police officer observed that the windows of Defendant's vehicle were darkly tinted to a degree that, in the officer's experience, likely constituted a violation of New York law for which he was authorized to conduct a traffic stop. The district court did not err in concluding that the officer's observations of Defendant's tinted windows furnished probable cause for the initial traffic stop.[1]

The officers' testimony showed that, when the officers approached the vehicle, Defendant appeared nervous, expressed anger at the officers, gave the officers a false name, and attempted to exit the vehicle despite the officers' instructions to the contrary. When Defendant exited the vehicle despite these

---

[1] Defendant's argument that his tinted windows were not the actual reason he was stopped by the police is irrelevant to determining whether adequate probable cause supported the stop, as whether a traffic stop is "reasonable" under the Fourth Amendment does not depend on the "actual motivations of the individual officers involved." *Whren*, 517 U.S at 813.

4

contrary instructions, the officers told him to place his hands on the vehicle. Defendant initially complied, but repeatedly took his hands off the vehicle and attempted to turn and face the officers. The officers told Defendant two or three times to place his hands on the vehicle so they could frisk him "for everybody's safety." Special App'x 26. We find no error in the district court's conclusion that, based on the lawfulness of the traffic stop, the officers' knowledge of Defendant's prior involvement in narcotics distribution, and "Defendant's suspicious behavior, including his belligerence and failure to comply with the officers' instructions," the officers were justified in undertaking to frisk the Defendant for their safety. Special App'x 46-47.

Before the officers could conduct the frisk, Lucas broke free, knocked one of the officers to the ground, and instructed his son, who was a passenger in the car, to run. Defendant's son attacked one of the officers, allowing Defendant time to get up from the ground and start running from the scene. While fleeing, Defendant unsuccessfully attempted to enter three occupied vehicles before running through traffic on a public roadway. Law enforcement officers eventually caught up to Defendant, tackled him, handcuffed him, and took him into custody. We agree with the district court that this ultimate arrest was

5

supported by probable cause. Defendant's knocking over one of the officers in escaping from them, his dangerous flight through oncoming traffic to prevent the officers from conducting a lawful frisk, and his repeated attempts to open the doors of occupied vehicles plainly provided probable cause to justify his arrest. In short, the district court did not err in finding that Defendant's Fourth Amendment rights were not violated during the events beginning with the traffic stop and culminating in his arrest. Accordingly, we affirm the district court's denial of Defendant's motions to suppress evidence recovered from his vehicle and person subsequent to his arrest. Because we find that his seizure was not unlawful, we also reject Defendant's arguments that evidence from additional sources should have been suppressed as the fruit of the challenged traffic stop and arrest.

Nor was there error in the district court's denial of Defendant's motion to suppress evidence recovered in a search, pursuant to a search warrant, of Room 113 of the hotel, nor in the denial of a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), by reason of the fact that some of the information given by law enforcement to the judge who issued that warrant was false.

"To suppress evidence obtained pursuant to [a sworn statement] containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2020) (quotation marks omitted). Applying the second prong of this test requires courts to "disregard the allegedly false statements and determine whether the remaining portions of the [sworn statements made to the judge] would support probable cause to issue the warrant." *Id.* at 718 (internal quotation marks omitted). This inquiry is a legal question, which we review *de novo*, without deference to the issuing judge's probable cause determination "because [the judge] did not have an opportunity to assess the [application] without the inaccuracies." *Id.* at 717.

We need not decide whether Defendant has satisfied the first prong of this test, because the search warrant was adequately supported by probable cause without regard to the allegedly inaccurate statements. The following facts communicated to the issuing judge (and not claimed to be inaccurate) adequately support a finding of probable cause: (1) Defendant had rented Room 113 at the

7

hotel in his name; (2) when arrested, Defendant was found to have on his person a key card to a room in the hotel, reasonably assumed to be a key to Room 113 as that was the room he had rented; (3) Defendant was known to multiple law enforcement agencies as a "huge cocaine dealer"; and (4) when Defendant was stopped by law enforcement upon his arrival at the hotel parking lot, he broke free of the officer's hold and knocked an officer to the ground, then told his son to flee, whereupon his son assaulted an officer. This conduct by a known drug dealer in the parking lot of a hotel where he had rented a room and had a room key in his pocket indicates an intense concerned that his room might be searched, which in the totality of circumstances justifies a finding of probable cause.

Defendant raises several additional challenges to the district court's denials of his numerous suppression motions, including attempts to suppress: (1) his statements to police shortly following his arrest; (2) evidence obtained from a search of his cell phone based on his consent as well as a subsequently obtained search warrant; (3) evidence obtained pursuant to a search warrant for a storage locker in Tonawanda, New York; and (4) evidence related to a 2017 encounter with law enforcement at the Buffalo International Airport. We reject these

arguments for substantially the reasons described by the district court in its thorough written decisions.

**II. Alleged Constructive Amendment of Indictment**

Defendant argues that the district court constructively amended the operative indictment by striking from it the name of his alleged co-conspirator over Defendant's objection. On *de novo* review, *see, e.g.*, *United States v. Banki*, 685 F.3d 99, 118 (2d Cir. 2012), we disagree.

A constructive amendment to an indictment occurs either where "(1) an additional element, sufficient for conviction, is added," or "(2) an element essential to the crime charged is altered." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). Unless an alteration of the indictment "affect[s] the core elements of the crime" it "is not [an unlawful] constructive amendment." *Id.* at 147. The identity of Defendant's alleged co-conspirator is not an element of the conspiracy with which Defendant was charged. The removal of the alleged co-conspirator's name did not prejudice Defendant's interests.

**III. Admission of Certain Background Evidence**

Defendant further contends that the district court erred in admitting several instances in which he allegedly participated in narcotics conspiracies

prior to the time period charged in the indictment. We review evidentiary rulings for abuse of discretion. *See, e.g.*, *United States v. Flores*, 945 F.3d 687, 704 (2d Cir. 2019).

The district court admitted the evidence of Defendant's prior involvement in uncharged narcotics conspiracies to (1) corroborate the veracity of Defendant's confession to law enforcement in May 2017 and (2) explain how Defendant came to know the individual from whom he obtained cocaine in May 2017 (during the time period charged by the indictment). Because the challenged evidence tended to show the understanding or intent with which Defendant gave his confession and showed the circumstances surrounding Defendant's acquisition of the cocaine that was the subject of the conspiracy charged by the indictment, we conclude that the district court did not abuse its discretion in admitting the evidence.

**IV. Application of "Career Offender" Enhancement**

Defendant contends that the district court erred by relying on Defendant's 2003 conviction under N.Y. Penal Law § 220.16(1)—which criminalizes possession of a "narcotic drug" with "intent to sell it"—as a predicate conviction supporting application of a "career offender" enhancement at sentencing.

Because Defendant did not object to this enhancement before the district court, we review only for plain error. *See, e.g.*, *United States v. Reyes*, 691 F.3d 453, 457 (2d Cir. 2012). "Plain error exists where (1) the district court committed error; (2) the error is plain; (3) the error affects the defendant's substantial rights; and (4) the error seriously affects the 'fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Greer*, 631 F.3d 608, 612 (2d Cir. 2011)).

A defendant is a "career offender" if he was at least eighteen years old when he committed the instant offense of conviction, that instant offense is a felony and either a crime of violence or a controlled substance offense, and the defendant has at least two prior felony convictions for either crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). A "controlled substance offense" is:

> an offense under federal or state law, punishable by imprisonment
> for a term exceeding one year, that prohibits the manufacture,
> import, export, distribution, or dispensing of a controlled substance
> (or a counterfeit substance) or the possession of a controlled
> substance (or a counterfeit substance) with intent to manufacture,
> import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). We have held that "a 'controlled substance' under § 4B1.2(b) must refer exclusively to those drugs listed under federal law—that is, the

11

[Controlled Substances Act]." *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018). As a result, "[a] state conviction will qualify as a predicate offense under [the Guidelines] if the state conviction aligns with, or is a 'categorical match' with, federal law's definition of a controlled substance." *Id.* at 72. "If a state statute is broader than its federal counterpart—that is, if the state statute criminalizes some conduct that is not criminalized under the analogous federal law—the state conviction cannot support an increase in the base offense level." *Id.*

Defendant contends that his 2003 conviction under N.Y. Penal Law § 220.16(1) was broader than its federal counterpart in two respects, which, if correct, would demonstrate that the 2003 conviction was not a "controlled substance offense" under U.S.S.G. § 4B1.2. First, Defendant argues that in 2015, naloxegol was removed from the federal drug schedule but was still criminalized by New York under the definition of "narcotic drug," meaning that, by the time he was sentenced in 2019, the state and federal schedules were no longer a categorical match. Second, Defendant argues—in a Fed. R. App. P. 28(j) letter filed subsequent to his opening brief, but approximately three weeks before the Government filed its responsive brief—that the federal drug schedule, which

12

defines "cocaine" as including "geometric" and "optical" cocaine isomers, 21 C.F.R. §§ 1300.01(b), 1308.12(b)(4), has always diverged from the New York schedule, which defines cocaine as including its isomers without specifying specific isomer categories, N.Y. Pub. Health L. § 3306.

We conclude that the district court did not plainly err in failing to consider either of these theories for disqualifying Defendant's 2003 conviction as a predicate offense for "career offender" status. The first argument, relating to the state and federal schedules' different treatment of naloxegol, presents an unsettled question of law: whether to adopt a "time-of-conviction approach" by which we compare the state and federal schedules at the time of Defendant's predicate conviction, or a "time-of-sentencing" approach by which we compare the state and federal schedules as they existed at the time of the sentence challenged on appeal. Because our Circuit has not provided a clear answer to this unsettled question—indeed, this very question, involving the different treatment of naloxegol between the New York and federal schedules, is currently before this Circuit in other cases, including *United States v. Gibson*, No. 20-3049—we cannot say the district court plainly erred in failing to adopt the "time-of-sentencing" approach that would have here produced a favorable result to

13

Defendant. *See, e.g., United States v. Weintraub*, 273 F.3d 139, 152 (2d Cir. 2001) ("For an error to be plain, it must, at a minimum be clear under current law." (internal quotation marks omitted)).

Defendant's second argument, relating to the apparently different listing of cocaine isomers between the two schedules, relies entirely on a district court opinion decided *after* Defendant's sentence was imposed in this case. *See* Def.'s Reply Br. at 27-28 (citing *United States v. Fernandez-Taveras*, No. 18-cr-455, 2021 WL 66485 (E.D.N.Y. Jan. 7, 2021)). And, similarly to Defendant's naloxegol argument, how to interpret New York's less specific definition of cocaine (as compared to the federal schedule) presents an unsettled question of law currently pending before this Circuit in other cases, including *United States v. Johnson*, No. 19-4071. Given the unsettled nature of the questions relevant to Defendant's argument, we cannot conclude the district court plainly erred in concluding that Defendant's 2003 conviction was for a "controlled substance offense," notwithstanding the definition of cocaine in the federal and state drug schedules.

\* \* \*

We have considered Lucas's remaining arguments and conclude that they are without merit. The judgment of the District Court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk